482 P.2d 702

**Jack Albert WAGNER, Plaintiff and Appellant,**

**v.**

**Earl C. OLSEN, Defendant and Respondent.**

**No. 12094.**

Supreme Court of Utah.

March 11, 1971

Ellett, J., dissented and filed opinion.

David E. Bean, of Bean, Bean & Smedley, Layton, for appellant.

Harold G. Christensen of Worsley, Snow & Christensen, Salt Lake City, for respondent.

CALLISTER, Chief Justice:

Plaintiff appeals from a judgment, upon a jury verdict, of no cause of action in his suit for the wrongful death of his three year, ten month old son.

Since it is our duty on review to accept as fact that evidence and the reasonable inferences to be drawn therefrom which supports the jury verdict,[1] we will recite the facts accordingly.

Plaintiff was proceeding in a southerly direction, after dark, at about seven o'clock in the evening, in his automobile on U. S. Highway 91, in Layton, Utah, on November 1, 1964. He observed an automobile accident; so he continued to an area where he could make a U-turn and returned to the vicinity of the accident, parking his vehicle on the opposite side of the road. He parked in such a manner that his vehicle extended approximately two feet onto the edge of the pavement of the north-bound lane. This area is bounded by fields, and there is no street lighting to illuminate the immediate vicinity. Plaintiff left his three-year-old son, strapped by a seat belt in the vehicle, and crossed the four-lane, divided highway to the site of the accident. A highway patrolman and several other people were in attendance at the accident, and there was no evidence to indicate that plaintiff's assistance was required; nevertheless, he remained for approximately 15 minutes at the scene, leaving his son alone in the car.

Defendant was proceeding in a northerly direction on Highway 91, in the same direction as plaintiff's vehicle was parked. Defendant was traveling at a speed of approximately 39 miles per hour in a 40-mile-per-hour zone. One or more other vehicles were also parked near plaintiff's car. According to defendant, as he passed the parked cars, the boy suddenly darted out onto the highway and was struck by defendant's vehicle. The boy succumbed from the injuries he sustained, shortly thereafter. Evidence of a blood alcohol test indicated that defendant was under the

1. First Security Bank of Utah v. Lundahl, Inc., 22 Utah 2d 4£3, 434, 454 P.2d 886 (1969).

influence of intoxicating liquor.[2] Defendant admitted consuming liquor prior to his operating the vehicle.

Plaintiff's theory of this case, which was reflected both in his complaint and in the matters put in issue at the trial, was premised exclusively on defendant's negligent operation of his vehicle in the following particulars: failure to keep a proper lookout, failure to keep the vehicle under proper control, driving at excessive speed under the prevailing conditions, driving under the influence of alcohol so as to be incapable of observing, responding, or reacting as would a normally prudent person under the circumstances.

The defense was buttressed on the theory that under the physical facts even a person with normal reactions, unimpaired by alcohol, would have been unable to avoid striking the boy. Defendant further pleaded that plaintiff was contributorily negligent in that he failed to exercise reasonable care of his son under the circumstances.

On appeal, plaintiff contends that the trial court should not have instructed the jury concerning contributory negligence because there were insufficient facts adduced to justify such an instruction.

Plaintiff did not elect to take an exception to either Instruction No. 16 or No. 22. Rule 51, U. R. C. P., provides:

\* \* \* No party may assign as error the giving or the failure to give an instruction unless he objects thereto. In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection. Notwithstanding the foregoing requirement, the appellate court, in its discretion and in the interests of justice, may review the giving or failure to give an instruction. \* \* \*

Plaintiff has not complied with the requirements of Rule 51, U. R. C. P., and, on appeal, he has not sustained the burden to show special circumstances that would warrant a departure from the rule, i. e., he has failed to indicate a persuasive reason to invoke the discretion of this court to extricate a person from a situation where some gross injustice or inequity would otherwise result.[3]

Plaintiff urges that the trial court erred by its failure to instruct the jury that contributory negligence does not bar a recovery by plaintiff for injuries proximately caused by defendant's wilful and wanton misconduct.[4]

2. See Sec. 41-6-44(b) (3), U.C.A.1953, as amended 1957.

3. McCall v. Kendrick, 2 Utah 2d 364, 366, 274 P.2d 962 (1954).

4. Ferguson v. Jongsma, 10 Utah 2d 179, 186, 350 P.2d 404 (1960).

■ There is nothing in the record to indicate that plaintiff requested such instruction. Furthermore, and of prime importance, plaintiff has asserted the concept of wilful and wanton misconduct as a ground upon which to predicate liability for the first time on appeal. Matters neither raised in the pleadings nor put in issue at the trial cannot be considered for the first time on appeal.[5] In Simpson v. General Motors Corporation[6] this court held that a party may not inject a new doctrine upon which to predicate liability for the first time on appeal. This court stated:

* * * Orderly procedure, whose proper purpose is the final settlement of controversies, requires that a party must present his entire case and his theory or theories of recovery to the trial court; and having done so, he cannot thereafter change to some different theory and thus attempt to keep in motion a merry-go-round of litigation.

Plaintiff asserts that the trial court erred in giving an instruction on unavoidable accident. Instruction 20 provided:

The law recognizes unavoidable accidents. An unavoidable accident is one which occurs in such a manner that it cannot justly be said to have been proximately caused by negligence as those terms are herein defined. In the event a party is damaged by an unavoidable accident, he has no right to recover, since the law requires that a person be injured by the fault or negligence of another as a prerequisite to any right to recover damages.

In Calahan v. Wood[7] this court cited the following principle:

"* * * there are some situations where the evidence is susceptible of being so interpreted that an accident occurred without negligence on the part of anyone, and if it is reasonably susceptible of such interpretation, and a party requests it, the trial court commits no error in so advising the jury."

The statements of this court in Woodhouse v. Johnson[8] are equally applicable to the instant action:

* * * the parties are entitled to have the jury instructed concerning their respective theories of the case, we are not persuaded that the trial court committed error which would justify reversal in giving it. If the accident happened as the defendant contends, * * * there is nothing further in the exercise of reasonable care that she

5. Estate of Ekker, 19 Utah 2d 414, 416, 432 P.2d 45 (1967).

6. 24 Utah 2d 301, 303, 470 P.2d 399, 401 (1970).

7. 24 Utah 2d 8, 10–11, 465 P.2d 169, 170 (1970).

8. 20 Utah 2d 210, 214–215, 436 P.2d 442, 446 (1968).

should have done to have avoided the accident; and thus from her point of view, the accident would be unavoidable, and there could be no great harm in so advising the jury.

■ In the instant action the main thrust of the defense was that from defendant's position the accident was unavoidable. At trial, the child's negligence was never an issue, and through an expert witness, the defense established the requisite distances to stop based on the physical evidence at the scene. Instruction 20 clearly coincided with defendant's theory of the case. Furthermore, even if this instruction were improperly submitted to the jury, it did not constitute reversible error. A survey of the entire record reveals that the parties were given a fair trial and had the issues of fact and the applicable law presented to the jury in a clear and understandable manner.[9]

Plaintiff further urges that defendant's expert witness was permitted to give an opinion based on facts not in evidence. A hypothetical question was posed to Captain Pitcher, Highway Patrol, concerning the stopping distance of a vehicle based on the physical facts established by the evidence.

On appeal, plaintiff challenges all the facts, and defendant in turn cites the record to establish the basis of each. However, at trial plaintiff's objection was asserted on the ground that the hypothetical question concerned the stopping distance for a person with a normal reaction time, and he vigorously contended that there was no evidence to indicate that defendant's reaction would be normal but would be impaired by intoxication.

■ The trial court properly overruled plaintiff's objection. The hypothetical question properly presented the defense's theory of causation, namely, that the death of plaintiff's son was not proximately caused by the manner of operation of the vehicle.

* * * this court has long recognized that where the facts are in dispute, hypothetical questions may be framed either upon all the facts of the case, or upon facts which fairly represent the theory of the party producing the expert.[10]

Finally, plaintiff contends that the trial court improperly limited plaintiff's cross-examination of defendant's expert witness,

9. See Calahan v. Wood, note 7, supra.

10. In Re Richards Estate, 5 Utah 2d 106, 112, 297 P.2d 542, 546 (1956); also see Caperon v. Tuttle, 100 Utah 476, 482, 116 P.2d 402 (1941), wherein this court observed that opinions as to stopping distances of automobiles are admissible when based on facts such as the type of car, the surface and grade of the road, and similar circumstances which correspond to the evidence before the court.

Captain Pitcher. Plaintiff did cross-examine the defense witness so as to test his credibility, knowledge and good faith. Plaintiff, however, reiterated the hypothetical question submitted by the defense except he substituted the reaction time of an intoxicated person for that of a normal one. The trial court sustained the objection of the defense, which was on the ground that the question went beyond the testimony given on direct examination.

\* \* \* The latitude permitted in the cross-examination of an expert witness is even wider than in the case of an ordinary opinion witness. No rule can be laid down that would determine the extent and limitation of cross-examination allowable in every case. Generally speaking, the matter must rest in the sound discretion of the judge trying the case. \* \* \*[11]

Plaintiff has not established that the trial judge abused his discretion and thus that his ruling was prejudicial. Furthermore, plaintiff was given an opportunity to discuss the matter with the witness during a short recess and to determine whether he wished to call Captain Pitcher as his own witness. Under the foregoing circumstances there is no ground upon which to sustain his assertion of prejudicial error.

[11]. Bott v. Wendler, 203 Kan. 212, 453 P.2d 100, 113 (1969); also see 71 A.L.

The judgment of the trial court is affirmed; costs are awarded to defendant.

TUCKETT, HENRIOD, and CROCKETT, JJ., concur.

ELLETT, Justice (dissenting).

I am unable to agree to the affirmance of the judgment entered in the court below. The defendant was drunk at the time he ran over and killed a little boy aged three years ten months. The chief of police of the town of Layton, Utah, who investigated the matter a few minutes after it occurred, testified that the defendant was drunk and did not seem to understand what he was talking to him about; that the defendant was quite vague and seemed to have only one thing in mind: that if he could just go home, the entire problem would be solved. The defendant testified that he was an alcoholic and at the time of the accident he would be classed as drunk. Two hours after he ran over the child, the alcoholic content of his blood was 0.28 per cent by weight. He testified that he drank after the accident, but no one saw him do it, and the plaintiff, a highway patrolman, and the arresting officer and others were with him constantly from the time he stopped his automobile until the blood sample was taken. The chief of police of Layton City testified that the defendant told

R.2d, Anno: Expert Witness—Cross-Examination, § 5(b), p. 15.

him that he had not had anything to drink after the accident.

The highway at the place in question was zoned for a speed of 40 miles per hour. Sections 41–6–46 and 41–6–48, U.C. A. 1953, provide that a posted speed is presumed lawful where there is no special hazard existing, but that speed shall always be controlled so as to avoid colliding with any person, etc., on or entering the highway. Here there was a special hazard: an overturned car on the west side of the highway, a highway patrol car with flashing red lights, six or eight cars parked on the east side of the highway, and several cars on the west side. There were a number of people around the overturned vehicle. In addition to these special hazards, which should alert one to danger, the defendant was so drunk that he himself was not only a hazard but a menace as well.

The defendant said he had been driving 40 miles per hour but when he saw the overturned car and the parked automobiles on both sides of the highway, he took his foot off of the accelerator but did not know how much he slowed down. His car laid down brake marks of 80 feet for the front tires and 70 feet for the rear ones. The expert witness testified that when the brakes were applied, the car was going 38 or 39 miles per hour.

The defendant testified that he first saw the child when it was five feet in front of his right headlight. The fact is that before impact he laid down 40 feet plus the length of a car of brake marks. The reaction time of a drunk would be more than that of a normal person, so the defendant must have seen the child for an additional distance of 58 feet for each second of his reaction time. The child was 25½ feet into the road from his father's car when he was hit, and there was nothing to prevent the defendant from seeing him while he traveled that distance.

In my opinion the defendant was negligent as a matter of law for the reasons set out above.

While the record before us does not show that plaintiff asked for a directed verdict, he did raise the question by a motion for a new trial.

One wonders what would cause a jury to find as it did under the facts of this case. I think the answer is to be found in the instructions given and the rulings made by the court.

The court gave an instruction as follows:

A person in crossing the highway in the vicinity of this accident was required by law to yield the right-of-way to all vehicles on the roadway so near as to constitute an immediate hazard. You may consider this only in connection with the conduct of the defendant and the plaintiff.     .    .    ..    .    .    .  . .

The first part of this instruction could only apply to the child; and while the last sentence says it can be considered only in connection with the conduct of the defendant and the plaintiff, it is confusing and meaningless to try to apply it to a non-existent fact situation. The jury may not have understood the legal term "plaintiff." Had the instruction said that the first sentence applied only to the conduct of Mr. Wagner, the jury would have been in a quandary as to what it did mean.

After instructing the jury on all possible defenses to negligence, the court then proceeded to give that old standby instruction loved by defendants and criticized by most decisions of recent times, to wit: the unavoidable accident. For a discussion of this instruction, see my dissent in the case of Woodhouse v. Johnson, 20 Utah 2d 210, 216, 436 P.2d 442, 446 (1968).

The court further instructed that a person who is exercising due care has a right to assume that others will also perform their duties under the law. This instruction clearly told the jury that the infant child was violating his duty under the law and that the defendant was relieved from responsibility because of it. The child owed no duty to the defendant, and he violated no law. He was too young to be charged with any duty to the defendant or to anybody else.

The court also told the jury that it was the duty of a person to drive a car on the highways while he was not under the influence of intoxicating liquor. This is not a true statement of the law. One does not have a duty to drive at all. What should have been said was that no person has a right to drive a car upon the highways of this state while he is under the influence of intoxicating liquor.

He further told the jury that if Mr. Wagner did not do what a prudent man would have done in caring for and supervising his son, he was negligent and could not recover. The number of persons killed and maimed daily by drunk drivers on the highways of this nation has reached an appalling figure. It is my judgment that it would be a salutary rule if we withheld from a motorist the defense of contributory negligence when he is involved in a collision while driving under the influence of intoxicating liquor. The defense of contributory negligence was originally devised by the courts to punish a plaintiff for his own misconduct. See Lord Halsbury, L. C., in Wakelin v. London & S. W. R. Co., 12 A.C. 41, (1886). It is nothing more than a rule of court, and since it was instituted by the courts, it can be modified by them. In fact, the courts have everywhere held that contributory negligence was not a defense to wilful or wanton misconduct. See Prosser, The Law of Torts, Third Edition (Hornbook Series), Section 64, page 436. To me it seems that a drunk person who undertakes to drive an automo-

bile upon the highways is guilty of extremely wanton misconduct and should be held responsible for any damages caused by his negligence.

The court allowed an expert witness to assume the boy ran the 25½ feet from his father's car and then state how long it would take a child to run that distance. Then using that time limit the witness calculated the distance from the point of impact the defendant would have been when the child came from behind his father's vehicle. He then testified that a sober man would not have been able to stop before impact. There was no evidence that the child ran or that his speed of racing was that assumed by the witness. The objections of plaintiff to this testimony were overruled by the court. This testimony would tend to plant in the mind of the jurors the fact that the child "darted out" when no one except the defendant saw the child, and he only saw it when it was five feet away. There was no evidence that it ran anywhere. The failure to sustain the objection was error.

It cannot be told from the record whether the jury thought the plaintiff was negligent in leaving his son strapped in the front seat while he ran across the road to see if he could be of assistance or whether it thought the defendant was not negligent. To me it seems that a new trial should be given, and I would so order it with costs awarded to the appellant.