**Ann T. GEORGE and Thomas J. George**

**v.**

**Robert. GUERETTE, Jr., et al.**

Supreme Judicial Court of Maine.

June 18, 1973.

Skelton, Taintor & Abbott by Frederick G. Taintor, Charles H. Abbott, Lewiston, for plaintiffs.

Linnell, Choate & Webber by John R. Linnell, Curtis Webber, Auburn, Mahoney, Robinson, Mahoney & Norman by Lawrence P. Mahoney, Robert F. Hanson, Portland, Platz & Day by Thomas E. Day, Jr., Thomas F. Kinnelly, III, Lewiston, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

While she was driving in a blizzard from Massachusetts to her home in Auburn on February 25, 1966, Mrs. George's automobile was struck, on separate occasions, by three other vehicles. In separate counts in this action she sought to recover for damages and injuries from the drivers of each of these three vehicles. Her husband sought consequential damages from each Defendant. The case was tried before a jury which returned interrogatories in which no negligence was found on the part of any one of the three Defendant drivers[1] or on the part of the Plaintiff.

After judgments were entered for the Defendants, Plaintiffs moved for judgments n. o. v. and, alternatively, for a new trial. These motions were denied and the Plaintiffs are here on appeal from the denials.

FIRST COLLISION

On the afternoon of February 25, 1966 in the vicinity of Mile 33 of the Maine Turnpike a heavy snowstorm was in progress creating poor visibility and a slippery, snow-covered northbound lane. Mrs. George, accompanied by a passenger, upon reaching this point on her journey from Brockton, Massachusetts to Auburn, sensed that her Chrysler automobile was going into a skid and pulled over to the extreme right hand side of the road, running into the snowbank and stopping parallel to and partially in the snowbank.[2] She turned her key off, unfastened her seat belt and made ready to open her car door to ask for help when she was struck in the rear by a Chevrolet Supersport operated by Defendant Guerette.

Defendant Guerette had approached the vicinity of Mile 33 on his way from Beverly, Massachusetts to Bowdoin College at about 35 miles per hour following closely enough behind another vehicle to see and follow its tail lights. This lead vehicle began to fishtail and swerve, and Defendant Guerette, after analyzing his situation, rejected the possible alternatives of attempting to stop straight in line or turning left into the median, and chose instead to pull to the right of the road into the snowbank. In the process of approaching this snowbank his car slid sideways in such a manner that he struck the rear of Mrs. George's parked Chrysler with the left middle side of his

1. It was also alleged by both Plaintiffs that the car being driven by the Defendant Guerette was owned by New England Divers, Inc. and that Guerette was acting as the agent and servant of this corporation.

New England Divers, Inc. answered admitting ownership but denying liability and was represented at trial. No evidence was offered which indicated that Guerette was acting as agent or servant of the corporation but that issue was never submitted to the jury.

2. Although it is unclear from the record as to how much of the northbound breakdown lane was available for vehicle use, the record indicates that vehicles could and did proceed to the left of Mrs. George's Chrysler without clearance difficulty both prior to and subsequent to the collision. The turnpike is a divided highway.

Chevrolet before coming to rest perpendicular to the roadway, his front end in the snowbank. Defendant Guerette never saw Mrs. George's all-white Chrysler until just prior to hitting it and only after he was entirely out of conrol.

## SECOND COLLISION

Late that same afternoon, shortly before 5:25 P.M., Mrs. George and her passenger were travelling in the northbound travel lane in the vicinity of Mile 52 of the Maine Turnpike. The weather and road conditions were the same as had been found earlier in the vicinity of Mile 33 albeit perhaps worse, and darkness had fallen. Mrs. George was driving slowly—traffic was passing to her left. A horn sounded and a bus passed. Shortly thereafter Mrs. George's Chrysler was struck in the left rear by a Mercury Comet operated by Christopher Bonnet which had overtaken her.

Defendant Bonnet, just prior to approaching the vicinity of Mile 52 on his way to Colby College at Waterville, had been following the lights of a large truck or bus. By this time visibility had been reduced to two car lengths. The large vehicle began to pull away from his Mercury until finally the lights disappeared altogether. A short time later Defendant Bonnet, travelling between 20 and 30 miles per hour, saw Mrs. George's Chrysler about fifteen feet ahead and to the right of his car. Mr. Bonnet said that a plow which had recently preceded him had plowed a single strip in the center of the highway which was more free of snow than the rest of the road and that Mrs. George's car was to the right of and outside of this strip. Bonnet attempted to move toward the left but struck the Chrysler in the left rear

with the right front of his Mercury Comet. On March 3, 1966 in the Trial Justice Court in Scarborough, Bonnet pleaded guilty to a charge of following too closely as a result of this collision, but he testified that he entered the plea of guilty only under duress.

## THIRD COLLISION

Mrs. George and her passenger arrived in Auburn in the early evening. It was dark, still snowing, and roads were icy and snow-covered. After passing the base of Court Street hill Mrs. George decided not to attempt driving any further up the incline because of apparent snarled traffic above. She stopped and then proceeded to back down a few feet, parking between two parked automobiles on the right hand side of Court just above James Street.[3] Some few minutes elapsed in which Mrs. George and her passenger remained in the car talking over what to do next during which time a few vehicles proceeded down the hill and passed them. Then their attention was drawn to a car about halfway down the hill coming directly toward them. It was a Chevrolet operated by the Defendant Louis Campbell and it struck Mrs. George's Chrysler a glancing blow on the left rear side.

Defendant Campbell's testimony indicates that he proceeded out onto Court Street from Highland Avenue at least 5 miles per hour.[4] As he crossed Court to the right hand lane his Chevrolet began to side-slip and he lost control. He further testified that despite attempting corrective measures in a continuous effort to regain control he struck Mrs. George's Chrysler on the left rear with his left front at a speed of about 15 miles per hour.[5] Defendant Campbell admitted having had two

---

3. There is a conflict in the testimony as to whether the Chrysler was parked parallel to Court Street or whether its rear was angled out slightly.

4. Mrs. George maintained in her testimony that Defendant did not come out from Highland Avenue onto Court Street.

Instead she saw his car proceeding down Court from above Highland Avenue.

5. Mrs. George insisted that she watched Defendant's car proceed down the hill in its proper lane and then cross over but that the vehicle did not at any time skid.

glasses of beer along with a hamburger an hour or more before the collision.[6]

During his charge to the jury the Presiding Justice gave the jury explanations of the doctrines of unavoidable accident and sudden emergency.

When the charge to the jury had been completed and before the jury had retired, Plaintiffs' attorney said to the Court:

"For the record, I would just object to the charge on unavoidable accident and on the sudden emergency doctrine."

M.R.C.P., Rule 51(b) defines the procedure which must be followed before a party may assign as error a portion of a Justice's instruction to the jury.

". . . No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Here there was a complete absence of any statement to the Justice of Plaintiffs' grounds for objection which would have given the Justice opportunity to have corrected his error, if he found there had been error. There was no attempt to inform the Justice whether counsel's objection was to the giving of the instructions as to one, two or all of Plaintiffs' claims against the three Defendants or whether he objected only to some particular language used. Therefore, the Plaintiffs have failed to meet a condition precedent to their right to assign complaints concerning the Justice's charge as error on appeal. State v. Collins, Me., 297 A.2d 620 (1972).

Our examination of the record as it relates to these instructions will be confined to a determination of whether the Justice's instructions contained seriously prejudicial errors.

### "Unavoidable Accident" Instruction

The giving of the instruction on "unavoidable accident", viewed in the light of other language of the charge and in the context of the facts of this case, gives us great concern. The Justice said:

"You are instructed that an accident is an incident that could not have been reasonably foreseen, anticipated, prevented or provided against. So that in this case, if you find that it was purely an accident, the defendant is not liable, or either or any of the defendants are not liable. On the other hand, if you find that the injury to the plaintiff could have been reasonably foreseen or anticipated or could have been prevented or provided against, then it is not an accident but is negligence in failing to prevent or provide against the happening of the injury."

An examination of the many decisions which have discussed the propriety of the use of the "unavoidable accident" instruction in motor vehicle negligence cases reveals that much conflict exists. See the annotation in 65 A.L.R.2d 20 (1959). Our study of the cases indicates to us that a small majority of the decisions have held that the Defendant is entitled to the instruction if there is evidence from which the jury could conclude that the collision could have happened without negligence on the part of the Defendant (for example, Wichita Transit Co. v. Sanders, 214 S.W. 2d 810 (Tex.Civ.App.1948)); that it is not error *per se* to give it (Guanzon v. Kalamau, 48 Haw. 330, 402 P.2d 289 (1965)); or that it may properly be given if the evidence justifies an inference of the absence of negligence or proximate cause (Woodhouse v. Johnson, 20 Utah 2d 210, 436 P.2d 442 (1968); Cooper v. Pay-N-Serve

---

6. Mrs. George testified that Defendant was drunk. The investigating officer testified that his personal observations of

Defendant led him to believe that two beers was "about correct".

Drugs, Inc., 59 Wash.2d 829, 371 P.2d 43 (1962); Grubb v. Wolfe, 75 N.M. 601, 408 P.2d 756 (1965); Dietz v. Mead, 52 Del. 481, 160 A.2d 372 (1960)).

A strong minority of courts have recently concluded that as the instruction can add little to a jury's understanding of the principles of negligence and proximate cause and as it has a great potential to mislead and confuse, it should not be given at all in the ordinary negligence action. Graham v. Rolandson, 150 Mont. 270, 435 P.2d 263 (1967); Lewis v. Buckskin Joe's, Inc., 156 Colo. 46, 396 P.2d 933 (1964); Fenton v. Aleshire, 238 Or. 24, 393 P.2d 217 (1964); Schaub v. Linehan, 92 Idaho 332, 442 P.2d 742 (1968); City of Phoenix v. Camfield, 97 Ariz. 316, 400 P.2d 115 (1965); Butigan v. Yellow Cab Company, 49 Cal.2d 652, 320 P.2d 500, 65 A.L.R.2d 1 (1958); Vespe v. DiMarco, 43 N.J. 430, 204 A.2d 874 (1964); Alaska Brick Company, Inc. v. McCoy, Alaska, 400 P.2d 454 (1965). Each of these courts recently overruled earlier decisions in adopting this rule.

It appears to us that the trend of recent decisions shows a developing strong disapproval of the use of this instruction.

The Supreme Court of Montana took this position in 1967, abandoning a long standing policy which had been reiterated only six years before. The Court said, in Graham v. Rolandson, supra, 150 Mont. at 290, 435 P.2d at 273:

". . . [I]t appears to us that the primary question before the jury in any negligence case is whether the defendant was negligent or not proximately causing the accident and this is the hurdle that plaintiff must surmount if he is to prevail. The giving of an instruction on 'unavoidable accident' unnecessarily injects a 'straw issue' in the case, diverts the attention of the jury from the primary issue of negligence, and necessarily creates the impression in the minds of the jurors of a second hurdle that plaintiff must overcome if he is to prevail. It is difficult to see how such an instruction adds anything but confusion in the minds of the jurors in understanding the principles of negligence. The particular vice of an unavoidable accident instruction in any case is that it tends to mislead the jury by creating a spurious additional issue in the case when in fact the sole issue is the presence or absence of negligence proximately causing the accident."

The California Court, apparently the leader in the present trend toward distrust of this instruction, analyzed the effects of its use in this frequently quoted language and declared the giving of the instruction to be error:

"In the modern negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show any circumstance which militates against his negligence or its causal effect. The so-called defense of inevitable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury. (Citations omitted.) The statement in the quoted instruction on 'unavoidable or inevitable accident' that these terms 'simply denote an accident that occurred without having been proximately caused by negligence' informs the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident. Since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose." Butigan v. Yellow Cab Company, supra, 49 Cal.2d at 658–659, 320 P.2d at 504.

The Supreme Court of Oregon expressed its dissatisfaction with the use of such language in Fenton v. Aleshire, supra, 238 Or. at 34, 393 P.2d at 222:

" . . . As this court has repeatedly declared, an unavoidable accident is nothing more nor less than an accident which occurs without anyone's fault. In practical effect, when included in the charge of the court to the jury, it is lagniappe to the defendant—not only because it is an added 'you-should-find-for-the-defendant' type of instruction, but because it may be misunderstood by the jury as constituting some sort of separate defense. By its very nature it has led this court—and we apprehend other courts—to regard the refusal to give the instruction as no ground for reversal, to attempt to delimit the type of cases to which it is applicable, to declare that even in those cases it is discretionary with the trial judge and to admonish caution in the use of the instruction. What is to guide the discretion of the judge in a particular case is by no means clear. . . ."

■ The precise issue has not heretofore been raised in this jurisdiction[7] although we have found—and still find—no error in instructions to the effect that the mere happening of an accident is not in and of itself evidence of negligence.[8]

Our study of the subject matter has convinced us that the use of an instruction such as was given here is not necessary to a proper understanding of the issues in a motor vehicle negligence action and that its potential for causing confusion and unfairness is so great that it should be avoided in all cases.

We believe that a proper understanding of the issues can better be achieved by careful explanations of the principles of negligence and proximate cause (causal fault in this jurisdiction under our comparative negligence statute (14 M.R.S.A. § 156)) without the use of the unavoidable accident language.

While in pure logic an unavoidable accident is one which did not result proximately from the party's negligence, we believe that the language tends to suggest to laymen that it is an additional defense which is available to the defendant exclusive of the principles of negligence and proximate cause. Furthermore, it may in some situations obscure the fact that a defendant *is* responsible for the results of his negligence which has created a situation in which disaster has *then*, too late, become unavoidable.

■ To a layman, the term itself when used at law is misleading without further explanation. As in a legal sense the term "unavoidable accident" does not literally mean that it was not possible that the accident could have been avoided but rather that it occurred without having been proximately caused by negligence, the term itself must have additional explanation for it to benefit the jury. Schaub v. Linehan, supra.

■ Our State's adoption of the principle of comparative negligence has added to the complexity of the rules which must be made clear to juries in motor vehicle negli-

---

7. In Greene v. Willey, 147 Me. 227, 236, 86 A.2d 82, 87 (1952) we find this language:

" . . . The driver of an automobile is not liable, however, even if he is negligent, if the accident is unavoidable, or if the person injured is of sufficient age to have the capacity to use care, and negligently contributes to his injury, and he is not liable if the accident is entirely due to the act of the child."

The statement that the driver is not liable, even if he is negligent, if the accident is unavoidable is dicta and we understand its use to have been reference to a situation where the negligence of the driver was not the proximate cause of the accident.

8. Chaisson v. Williams, 130 Me. 341, 347, 156 A. 154, 157; Bickford v. Berry, 160 Me. 9, 11, 196 A.2d 752, 753 (1964).

gence actions. Our own comparative negligence statute envisions a comparison of *causative fault* as to liability and, as to apportionment of damages, the jury must be told that it should give consideration to the relative blame-worthiness of the parties. Wing v. Morse, Me., 300 A.2d 491 (1973).

In short, we believe that the instruction contributes so little to the jury's understanding of the issues of motor vehicle negligence actions and its potential for confusion is now so great that its use must be declared to be error.

We realize that there will be fact situations in which the use of the instruction would be harmless. However, as we consider that giving of the charge is not necessary to a fair explanation of the principles involved, we feel that it is preferable to declare its use to be error rather than to leave the Justices and the litigants to the uncertainties of case by case rulings as to whether the particular facts have created a situation in which the charge may be given without danger of confusion.

We realize, of course, that the Justice and counsel here had had no previous indication from this Court that the language now under consideration would be found objectionable. However, we feel that the circumstances of this case make the giving of the instruction seriously prejudicial and manifest error.

The likelihood that serious prejudice resulted to the Plaintiff here from the use of the unavoidable accident instruction is increased by the existence of another confusing aspect of the instruction, to which no objection was made by counsel.

The Justice commenced his explanation of the nature of the action by saying:

"As in all previous negligence actions, —and this is no exception—in order for the plaintiffs to recover they must prove against the defendants, either jointly or singly, by a fair preponderance of the evidence as I have defined that term to you each and all of the following elements:

First, that the plaintiff just before and at the time of the occurrence in question was using reasonable care for her own safety; and

Second, that the defendants, either jointly or singly, were guilty of a negligent act or omission and the plaintiff was free from negligence, and that the plaintiff sustained the injuries charged and that they were proximately caused by the negligence, if any, of such defendant or defendants.

If the plaintiff fails to prove any one of the aforesaid elements by a fair preponderance of the evidence, she cannot recover.

Once again, when I use the word 'negligence', you know I am referring to degree of negligence. As I have previously told you, this is an abrogation of our previous law of contributory negligence, which prevented recovery by a plaintiff for damages in a case in which he or she was in any degree negligent. Our present law of comparative negligence provides that in cases of fault on the part of both plaintiff and defendant such claim by the plaintiff may not be defeated by reason of the fault of the plaintiff, but the damages recoverable in respect thereof shall be reduced to such extent as you the jury think just and equitable, having regard for the plaintiff's share in the responsibility for the damage, bearing in mind that the plaintiff's causal fault may not be equal to or greater than that of the defendant in order to recover."

So while the Justice had apparently given instructions in earlier cases in which he had explained to the jurors the distinction between the old contributory negligence doctrine and the new comparative negligence law, *this* jury was left with conflicting explanations as to the Plaintiff's burden of proof.

This danger of prejudice was also magnified by the fact that the jury was called upon to evaluate the conduct of three different Defendants in three entirely separate incidents and to compare it with the conduct of the Plaintiff on each of these three ocasions.

The jury received no explanation to aid them in evaluating the relative blameworthiness of causal fault in the respective cases and none was requested by counsel. The absence of such an explanation, especially in this case of multiple collisions, adds to our belief that the unavoidable accident instruction may very likely have confused the jury and that a failure of justice may have resulted.

*Sudden Emergency Doctrine*

Inasmuch as we have found that the giving of the unavoidable accident instruction was manifest error we see no advantage in now considering whether the giving of the explanation of the sudden emergency doctrine was also manifest error as to one or more of these cases.

*Plaintiffs' Motions for Judgments N.O.V.*

At the close of all the evidence the Plaintiffs moved for directed verdicts of judgment in their favor against the Defendants Guerette, Bonnet and Campbell. Their motions were denied. Following the jury verdicts the Plaintiffs again raised the issue of whether the evidence as presented could support jury verdicts for the Defendants by filing Motions for Judgments N.O.V. which were also denied. The Plaintiffs have assigned as error the Justice's refusal to grant the Motions for Judgments N.O.V. M.R.C.P., Rule 50(c).

■ We test the Justice's refusal to grant the Motions for Judgments N.O.V. by examining the evidence in the light most favorable to the party in whose favor the jury verdict was returned. Moore v. Fenton, Me., 289 A.2d 698, 700 (1972); Avery v. Brown, Me., 288 A.2d 713, 714–

715 (1972); Knowles v. Jenney, 157 Me. 392, 399, 173 A.2d 347, 351 (1961).

■ It is the unanimous conclusion of the Court that the Justice's refusal to grant the Motions for Judgments N.O.V. in the Plaintiffs' actions against Robert Guerette, Jr. and Louis W. Campbell should be sustained. The Court is evenly divided as to the Plaintiffs' claim of error in the Justice's refusal to grant their Motion for Judgment N.O.V. in their action against Christopher P. Bonnet and therefore, his refusal in this action is sustained also.

ᐟ The entries must be:

Appeals sustained.

New trial ordered.

All Justices concurring.

WEBBER and POMEROY, JJ., did not sit.