Stephen R. RANDLE, individually and as guardian for Nathan Randle, Sarah Randle and Spencer Randle, minor children, Plaintiff and Appellant,

v.

Carl Hunter ALLEN, an individual, Utah Department of Transportation, State of Utah, and Salt Lake County, Defendants and Appellee.

No. 900189.

Supreme Court of Utah.

Oct. 8, 1993.

Terry M. Plant, Salt Lake City, for Carl Hunter Allen.

Michael L. Deamer, Stephen R. Randle, Salt Lake City, for Stephen R. Randle.

STEWART, Justice:

Plaintiff Stephen R. Randle, individually and as guardian for his minor children, filed this action for the wrongful death of his wife, Rosan Randle, against the Utah Department of Transportation (UDOT), Salt Lake County, and Carl Allen. Randle settled his claims against UDOT and Salt Lake County on the second day of trial and proceeded against Allen. The jury returned a verdict finding Allen not negligent.

On appeal, Randle argues that the trial court erred in granting defendants too many peremptory challenges, in instructing the jury, and in making other evidentiary rulings. We reverse and remand for a new trial.

## I. FACTS

In the early afternoon of March 13, 1985, Rosan Randle's 1983 Honda Accord collided with defendant Carl Allen's ¾-ton pickup truck in the intersection of Wasatch Boulevard and Interstate 215, located at approximately 4800 South in Salt Lake County.[1] The posted speed limit for north and southbound traffic on Wasatch Boulevard was 40 miles per hour. Northbound traffic on Wasatch could continue north at the intersection, turn right onto a side street, or veer obliquely to the left onto the I-215 on-ramp. The on-ramp descended off the crest of a small hill, and drivers turning onto the on-ramp could not see the drop-off until after reaching the top of the hill. A stop sign at the intersection required southbound traffic to stop so that northbound traffic could turn left onto I-215.

The accident occurred when Mrs. Randle was driving south on Wasatch and Mr. Allen, who was driving north, turned left toward the I-215 on-ramp. Allen first saw Mrs. Randle's car when she was approximately 150 feet north of the stop sign. He then turned his attention to the drop-off onto I-215 and did not see Mrs. Randle's car again until just before impact. He did not see whether she had stopped at the stop sign. Allen stated at trial that he had signaled to turn left but at his deposition had testified that he could not recall signaling.

Brett Ellis arrived at the intersection just a moment after the accident. He was driving a large truck in the southbound lane of I-215 when, at about 4400 or 4500 South, he noticed a Honda parallel to him traveling south on Wasatch Boulevard. As Ellis arrived at the intersection, he heard a noise like a shotgun blast. He looked to his side and saw the Honda and Allen's truck spinning before coming to rest. At trial, Ellis testified to the relative positions of his vehicle and the Honda just prior to impact. He also did not see whether the Honda had stopped at the stop sign.

---

1. On the date of the accident, Interstate 215 temporarily ended at this intersection. Inter-state 215 has since been completed and no longer intersects with Wasatch Boulevard.

Mrs. Randle was unconscious at the scene of the accident and died soon after from her injuries. Her husband, Stephen Randle, individually and as guardian for his three minor children, sued Allen for negligent operation of his vehicle and UDOT and Salt Lake County for negligently designing and maintaining the intersection. Allen counterclaimed for medical expenses, lost wages, and damage to his truck. Randle settled the claims against UDOT and the County on the second day of trial and proceeded against Allen. The jury returned a verdict finding Mrs. Randle eighty percent negligent, UDOT nine percent negligent, the County eleven percent negligent, and Allen not negligent. The jury awarded Allen $5,780.57 for the loss of his truck.

On this appeal, Randle asserts that the trial court erred in (1) granting each of the three defendants four peremptory challenges, (2) giving the jury an unavoidable accident instruction, (3) refusing to instruct the jury that Allen had a duty to yield the right-of-way to Mrs. Randle, (4) allowing one of Allen's witnesses to testify as an expert, and (5) not permitting plaintiff to adduce evidence rebutting one of Allen's expert witnesses. We address each of these challenges in turn.

## II. PEREMPTORY CHALLENGES

The trial court permitted each party to exercise three peremptory challenges, the maximum number allowed under Rule 47(e) of the Utah Rules of Civil Procedure. Each party was also allowed to exercise against the entire panel the one additional challenge reserved by Rule 47(b) for alternate jurors. As a result, the three defendants collectively exercised a total of twelve peremptory challenges, and plaintiff exercised four. The jury that sat consisted solely of men.

Randle claims that defendants used their additional peremptory challenges to exclude women from the jury because an all-male jury would tend to be less sympathetic to Mrs. Randle, a female driver, and more sympathetic to Allen, a male. Allen disputes this assertion and argues that an all-male jury might actually be more sympathetic to Randle, a man who has lost his wife.

■ Rule 47(e) provides, "Each party shall be entitled to three peremptory challenges, except as provided under Subdivisions (b) and (c) of this rule." Subsection (c) states that "where there are several parties on either side, they must join in a challenge before it can be made." Prior to the promulgation of the Utah Rules of Civil Procedure, this Court construed almost identical statutory language to mean that co-parties are not deemed to be on the same side of a lawsuit if their interests are truly adverse. *Sutton v. Otis*, 68 Utah 85, 141, 249 P. 437, 457–58 (1926). In *Sutton*, one of the defendants practically admitted liability and cooperated with the plaintiff to establish the liability of the other defendant. In a separate lawsuit, the two defendants sued each other in federal court for damages arising out of the same set of facts. The trial court refused to allow one defendant to exercise a peremptory challenge because the other defendant refused to join in making the challenge. This Court held that it was prejudicial error to require co-parties to exercise their peremptory challenges together when their interests are clearly hostile and adverse. *Id.*

Allen relies on *Sutton* and argues that since the defendants in this case had separate counsel and filed separate answers and cross-claims against each other for indemnity or contribution, their interests were adverse. *Sutton* expressly held, however, that these factors by themselves do not establish the existence of adverse interests for purposes of the rule. Indeed, *Sutton* stated that extra peremptory challenges should be granted to multiple parties only if there is "a substantial controversy between them respecting the subject-matter of the suit." 68 Utah at 141, 249 P. at 457. Otherwise, parties on the same side of a lawsuit should join in exercising the allowed challenges. *Id. Sutton* held that a "substantial controversy" did not exist simply because co-parties were uncooperative and attempted to shift liability to the other. *Id.* at 144, 249 P. at 458.

Some courts have been more liberal and have granted additional peremptory challenges to co-parties simply because their defenses or claims rested on different facts, *Lauman v. Lee,* 192 Mont. 84, 626 P.2d 830, 835 (1981), or different legal theories, *Distad v. Cubin,* 633 P.2d 167, 171 (Wyo.1981). That approach, however, would entitle co-defendants to extra peremptory challenges in a majority of multiple-defendant cases, thereby imposing a significant disadvantage on plaintiffs. Other jurisdictions have offset the advantage of giving co-parties extra challenges by giving the trial court discretion to adjust the number of challenges given to the other side. *Goldstein v. Kelleher,* 728 F.2d 32, 37 (1st Cir.1984) (decided under 28 U.S.C. § 1870); *Schultz v. Gilbert,* 300 Ill. App. 417, 20 N.E.2d 884, 885–86 (1939); *see also Ellenbecker v. Volin,* 75 S.D. 604, 71 N.W.2d 208, 209 (1955). We do not find that degree of discretion built into subsection (c) of Rule 47.

■ Given the lack of discretionary language in Rule 47, we believe, in accord with *Sutton,* that extra peremptory challenges should be allowed only when a "substantial controversy" exists between the co-parties. While there may be some unfairness in requiring hostile co-parties to join in making their peremptory challenges, granting co-parties on one side of a lawsuit additional challenges places the opposing side at a disadvantage, particularly when, as here, there is a large disparity in the number of challenges allowed each side. *See Hunsaker v. Bozeman Deaconess Found.,* 179 Mont. 305, 588 P.2d 493, 501 (1978). To avoid favoring one side of a lawsuit over another, a trial judge must carefully appraise the degree of adverseness among co-parties and determine whether that adverseness truly warrants giving that side more challenges than the other.

■ In our view, a "substantial controversy" exists when a party on one side of a lawsuit has a cross-claim against a co-party that constitutes, in effect, a separate, distinct lawsuit from the action existing between the plaintiffs and defendants.

When, however, a cross-claim is merely a derivative of the original action, such as a cross-claim for indemnification or contribution, a "substantial controversy" does not exist for the purposes of Rule 47.

■ In the instant case, an actual independent lawsuit existed between Allen and the two governmental defendants. Allen cross-claimed against UDOT and the County, alleging, as had Randle, that the negligent design and maintenance of the intersection proximately caused his injuries. Allen therefore not only had to defend against Randle's claim, but he also had to establish the liability of both UDOT and the County to him. Thus, Allen's interest in choosing jurors aligned him with both plaintiff and the other defendants.

■ In contrast, no substantial controversy existed between the County and UDOT. Neither made a claim for damages against the other or against Randle or Allen. Both asserted that Allen and Mrs. Randle were the proximate cause of the injuries. They cross-claimed against Allen and each other only for the purpose of indemnification or contribution in the event they should be found negligent. Thus, their cross-claims were not independent lawsuits, but were derived from and dependent on the negligence actions filed by Randle and Allen. In addition, although each asserted that the other was more negligent, they had common interests in defending against the claims against them. Both defenses involved the condition or design of the intersection, and both defendants asserted that it was the negligence of the drivers of the vehicles, not the design or condition of the intersection, that caused the collision. In light of their common interests, the acts of negligence alleged against UDOT and the County by Randle were not so different as to place them in an essentially adversarial position to each other.

Because UDOT and the County were on the "same side" in this controversy, the trial court should have required them to act jointly in exercising the three peremptory challenges allowed a side. The trial court

did not err, however, in allowing Allen to exercise three peremptory challenges separately because he was, practically speaking, on a different side from the two other defendants and Randle.

■ Allen argues, however, that Randle is not entitled to a reversal and a new trial because he has not shown that he was prejudiced by defendants' receiving more peremptory challenges. A side that has additional peremptory challenges has the opportunity to shape the jury to its advantage. Although that self-evident statement does not itself show prejudice, the size of the disparity in the peremptory challenges allowed in this case was significant. Requiring a party to show prejudice in such circumstances is to require the impossible. " 'To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge[s] performed in accordance with the prescribed rule of the game.' " *Blades v. DaFoe*, 704 P.2d 317, 322 (Colo.1985) (quoting *Kentucky Farm Bureau Mut. Ins. Co. v. Cook*, 590 S.W.2d 875, 877 (Ky.1979)). Accordingly, we hold that it was prejudicial error for the trial court to grant UDOT and Salt Lake County six peremptory challenges. That position is consistent, we note, with the rule that it is reversible error for civil or criminal litigants to be required to use peremptory challenges to remove jurors who should have been removed for cause. *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988); *State v. Jones*, 734 P.2d 473, 474 (Utah 1987); *State v. Hewitt*, 689 P.2d 22, 27 (Utah 1984); *State v. Brooks*, 631 P.2d 878, 883 (Utah 1981); *State v. Bailey*, 605 P.2d 765, 768 (Utah 1980); *Crawford v. Manning*, 542 P.2d 1091, 1092 (Utah 1975).

■ Randle also argues that the trial court erred in permitting Randle, UDOT, the County, and Allen to exercise the additional peremptory challenge allowed by Rule 47(b) against the entire panel. Rule 47(b) states, "If one or two alternate jurors are called each party is entitled to one peremptory challenge in addition to those

otherwise allowed. The additional peremptory challenge may be used only against an alternate juror, and the other peremptory challenges allowed by law shall not be used against the alternates." Because an additional peremptory challenge under this rule may be used only against alternate jurors, and not against the entire panel, the trial court erred in allowing the additional peremptory challenges to be exercised against the whole panel.

Because the trial court erred in its rulings on peremptory challenges, we reverse and remand for a new trial. We proceed to address the other issues raised by plaintiff because they are likely to arise again in a new trial. *See* Utah R.App.P. 30(a).

## III. JURY INSTRUCTIONS

### A. *Unavoidable Accident Instruction*

At Allen's request and over Randle's objection, the trial court gave the jury the following unavoidable accident instruction:

> In the law we recognize what we term as unavoidable or inevitable accidents. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still no one may be held liable for injuries resulting from it.

Randle asserts that the unavoidable accident instruction is inherently misleading and should be abandoned and that, in any event, the evidence does not justify the instruction in this case. We agree that the instruction should be abandoned.

■ The legal concept of unavoidable accident is a remnant of an earlier era of the common law when injuries to a person or property could be sued on in an action for trespass. At early common law, the plaintiff did not have to prove negligence in an action for trespass; liability could be imposed if a defendant merely caused an injury. The concept of an unavoidable accident

was an affirmative defense to an action for trespass that had to be pleaded and proved by the defendant. *See* 2 Fowler W. Harper & Fleming James, Jr., *The Law of Torts*, § 12.2, at 747 (1956); *Butigan v. Yellow Cab Co.*, 49 Cal.2d 652, 320 P.2d 500, 504 (1958); *Woodhouse v. Johnson*, 20 Utah 2d 210, 224–25, 436 P.2d 442, 453 (1968) (Ellett, J., dissenting).

Except for intentional torts and strict products liability, modern tort law does not generally impose liability for personal injury absent fault or negligence on the part of the defendant. To characterize an "accident" as "unavoidable" under modern negligence law is to say, in effect, that there is no liability for injuries caused by the "accident." The same result may be reached by a proper application of the elements of a cause of action for negligence. The unavoidable accident instruction, however, circumvents proper application of those elements and to that extent allows the jury to reach a result without following the principles set out in the usual negligence instructions. *See Woodhouse v. Johnson*, 20 Utah 2d 210, 219, 436 P.2d 442, 445 (1968) (Ellett, J., dissenting).

An unavoidable accident instruction creates a substantial potential for confusing and misleading the jury. The descriptive terms used in the instruction, "unavoidable" and "accident," can be misleading because of their commonly understood meanings. Webster defines "accident" as "a usually sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result (a traffic accident in which several persons are injured)." *Miller v. Alvey*, 246 Ind. 560, 207 N.E.2d 633, 636 (Ind.1965) (quoting *Webster's Third World International Dictionary*). A jury could rely on the general understanding that the term "accident" is simply an unfortunate and unavoidable injury-causing event for which there is no responsibility, even though under traditional tort concepts the accident was caused by negligence.

Compounding the confusion is the implication that "if proved, ... [a finding of an unavoidable accident] constitutes a second ground of nonliability." *Butigan v. Yellow Cab Co.*, 49 Cal.2d 652, 320 P.2d 500, 505 (1958). The instruction "diverts the attention of the jury from the primary issue of negligence and necessarily creates the impression in the minds of the jurors of a second hurdle that plaintiff must overcome if he is to prevail." *Graham v. Rolandson*, 150 Mont. 270, 435 P.2d 263, 273 (1967). In other words, the instruction creates "a spurious additional issue in the case when in fact the sole issue is the presence or absence of negligence proximately causing the accident." *Id.*

As a result, a jury faced with complex, conflicting, and less than compelling evidence and the imprecise rules of proximate cause and comparative negligence may be tempted to abandon a rigorous application of the instruction on the elements of negligence and burden of proof and return a verdict based on the simple notion that an accident was unavoidable or inevitable. As the California Supreme Court observed, "The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding." *Butigan*, 320 P.2d at 505.

The instruction may be especially misleading when the alleged negligence occurs sometime prior to the injury-causing event. In such a case, a jury may focus on the immediate circumstances of the injury-causing event, instead of on acts that occurred sometime prior to the event. Thus, the instruction "may in some situations obscure the fact that a defendant *is* responsible for the results of his negligence which has created a situation in which disaster has *then*, too late, become unavoidable." *George v. Guerette*, 306 A.2d 138, 143 (Me. 1973) (emphasis in original).

Apart from the inherent confusion in an unavoidable accident instruction, the instruction tends to reemphasize the defendant's theory of the case, that the defen-

dant was not negligent. To that extent, the instruction constitutes an inappropriate judicial comment on the evidence and could be viewed by the jury as a "you-should-find-for-the-defendant" type of instruction. *Fenton v. Aleshire,* 238 Or. 24, 393 P.2d 217, 222 (1964); *see also Butigan,* 320 P.2d at 505.

Of course, accidents do occur which might be unavoidable or for which the defendant or defendants are not negligent. In such cases, if the state of the evidence warrants it, the trial judge should direct a verdict, or the jury, applying proper instructions on the elements of negligence and burden of proof, should find no liability.

Because an unavoidable accident instruction is not necessary, runs the risk of misleading the jury, and suggests that an improper type of analysis might be used to decide a case, more than one-third of the states have held that such an instruction should not be given. These courts have often reached this result by overruling well-established precedents to the contrary. *Maxwell v. Olsen,* 468 P.2d 48 (Alaska 1970); *City of Phoenix v. Camfield,* 97 Ariz. 316, 400 P.2d 115 (1965); *Oklahoma Tire & Supply Co. v. Bass,* 240 Ark. 496, 401 S.W.2d 35 (1966); *Butigan v. Yellow Cab Co.,* 49 Cal.2d 652, 320 P.2d 500 (1958); *Lewis v. Buckskin Joe's, Inc.,* 156 Colo. 46, 396 P.2d 933 (1964); *Andrews v. Forness,* 272 A.2d 672 (D.C.1971); *Schaub v. Linehan,* 92 Idaho 332, 442 P.2d 742 (1968); *White v. Evansville Am. Legion Home Ass'n,* 247 Ind. 69, 210 N.E.2d 845 (1965); *Koll v. Manatt's Transp. Co.,* 253 N.W.2d 265 (Iowa 1977); *Sloan v. Iverson,* 385 S.W.2d 178 (Ky.1964); *George v. Guerette,* 306 A.2d 138 (Me.1973); *Graham v. Rolandson,* 150 Mont. 270, 435 P.2d 263 (1967); *Dyer v. Herb Prout & Co.,* 126 N.H. 763, 498 A.2d 715 (1985); *Vespe v. DiMarco,* 43 N.J. 430, 204 A.2d 874 (1964); *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973); *Fenton v. Aleshire,* 238 Or. 24, 393 P.2d 217 (1964); *Camaras v. Moran,* 100 R.I. 717, 219 A.2d 487 (R.I. 1966); *Hunter v. Johnson,* 178 W.Va. 383, 359 S.E.2d 611 (1987); *Cox v. Vernieuw,* 604 P.2d 1353 (Wyo.1980) (act of God defense not appropriate in negligence cases).

Heretofore, the law in Utah has been that an unavoidable accident instruction may be given under certain circumstances, but those circumstances have been ill-defined with no clear guidelines. *See Stringham v. Broderick,* 529 P.2d 425, 426 (Utah 1974). As demonstrated by this case, the instruction has been given when the evidence clearly establishes that one or more parties might be at fault. Because of the difficulties inherent in the instruction, we now hold that an unavoidable accident instruction should not hereafter be given in any case. Accordingly, we overrule our prior cases to the extent they approve the use of the instruction, even in limited situations. *See, e.g., Kusy v. K–Mart Apparel Fashion Corp.,* 681 P.2d 1232, 1237 (Utah 1984); *Anderson v. Toone,* 671 P.2d 170, 174 (Utah 1983); *Anderton v. Montgomery,* 607 P.2d 828, 833 (Utah 1980); *Stringham v. Broderick,* 529 P.2d 425 (Utah 1974); *Ellis v. Hathaway,* 27 Utah 2d 143, 493 P.2d 985, 986 (1972); *Wagner v. Olsen,* 25 Utah 2d 366, 482 P.2d 702, 705 (1971); *Calahan v. Wood,* 24 Utah 2d 8, 465 P.2d 169 (1970); *Woodhouse v. Johnson,* 20 Utah 2d 210, 212–14, 436 P.2d 442, 444–45 (1968); *Wellman v. Noble,* 12 Utah 2d 350, 366 P.2d 701, 702 (1961); *Porter v. Price,* 11 Utah 2d 80, 82–84, 355 P.2d 66, 67–68 (1960); *Steele v. Wilkinson,* 10 Utah 2d 159, 349 P.2d 1117, 1119 (1960); *Alvarez v. Paulus,* 8 Utah 2d 283, 333 P.2d 633, 635 (1959); *Best v. Huber,* 3 Utah 2d 177, 281 P.2d 208, 209 (1955).

## B. Right-of-Way Instruction

The trial court refused Randle's request to instruct the jury that a driver turning left must yield the right-of-way to any vehicle approaching from the opposite direction that is so close it poses an immediate hazard.

Randle based his proposed instruction on Utah Code Ann. § 41–6–73, which states, "The operator of a vehicle intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close to the

turning vehicle as to constitute an immediate hazard." That statute was intended to apply only to typical intersections where a person making a left-hand turn is required to yield to oncoming traffic. Here, the intersection had a stop sign that required southbound traffic to stop and yield to northbound traffic turning obliquely across it to enter the on-ramp to I–215. Northbound traffic was not required by a stop sign to yield the right-of-way to southbound traffic. The trial court properly refused to give Randle's proposed instruction.

## IV. ADMISSION OF OPINION TESTIMONY

Randle argues that the trial court erred in qualifying Officer Daniel Haggin as an expert witness because he lacked sufficient background in accident reconstruction, as evidenced by his inability to calculate the actual speed of the vehicles on impact.

 A trial court has discretion in determining whether a witness has adequate qualifications to testify as an expert and in determining whether specific testimony offered by an expert should be allowed or exceeds the expert's qualifications. *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 253 (Utah 1985); *State v. Clayton*, 646 P.2d 723, 726 (Utah 1982); *see also Edwards v. Didericksen*, 597 P.2d 1328 (Utah 1979) (foundation for testimony of accident reconstruction expert). An appellate court will not disturb the trial court's determination absent an abuse of discretion. *Lamb v. Bangart*, 525 P.2d 602, 607–08 (Utah 1974).

Officer Haggin was an investigating officer at the scene of the accident. He testified that prior to the accident he had completed approximately eighty hours of accident reconstruction training and that over a period of eleven years, he had investigated thousands and reconstructed hundreds of traffic accidents. He also testified on direct examination that although he had been unable to calculate the exact speed of the vehicles on impact, he believed that Mrs. Randle's vehicle was moving at forty miles per hour and that Allen's truck was

proceeding at between twenty-five and thirty-five miles per hour. On cross-examination, Haggin admitted that he had no basis for this conclusion, other than his past experience in investigating other accidents.

 Rule 702 of the Utah Rules of Evidence provides that a witness may qualify as an expert by reason of his or her knowledge, skill, experience, training, or education to give opinion evidence regarding scientific, technical, or other specialized knowledge. Thus, formal training or education is not a prerequisite to giving expert opinion, and a witness may qualify as an expert by virtue of his "experience [or] training." *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 253 (Utah 1985); *see also State v. Eldredge*, 773 P.2d 29, 37 (Utah 1989). Given Officer Haggin's experience in investigating and reconstructing accidents, the trial court acted within appropriate discretion under Rule 702 in allowing him to testify as an expert witness on accident reconstruction.

Haggin is not disqualified as an expert merely because he could not calculate the speed of the vehicles on impact. His testimony was not limited to the speed of the vehicles on impact; he testified, based on his investigation, concerning other facts of the accident and their significance with respect to causation. For example, he testified that there were no tire marks on the road, indicating that the vehicles were not moving above a certain speed. He testified that Allen's truck stopped thirty feet from the point of impact, demonstrating that Allen's speed did not exceed forty miles per hour. Haggin also gave a detailed description of the intersection and his opinion that Allen had to slow down to negotiate the curve. Even though Haggin could not calculate the exact speed of the vehicles, that did not negate the value of the rest of his testimony that could have assisted the jury in understanding the cause of the accident.

 Randle also asserts that Haggin should not have been permitted to testify as to who had the right-of-way. In light of

Haggin's extensive experience as a police officer investigating traffic accidents, it was not an abuse of discretion to allow him to testify as to which vehicle should have yielded the right-of-way at the intersection.

██ Finally, Randle argues that Haggin should not have been allowed to testify as to the speed of the vehicles because he was unable to produce an exact figure. Randle neither objected to the lack of foundation on that issue nor moved to strike the testimony after it became apparent that Haggin had no basis for the speeds given. Randle therefore waived his right to challenge the admission of this testimony.

## V. REBUTTAL WITNESS

Finally, Randle challenges the exclusion of his expert's rebuttal testimony. During his case-in-chief, Randle called Dr. Reynold Watkins as an expert witness on accident reconstruction. Dr. Watkins testified that in his opinion, Mrs. Randle stopped at the stop sign before entering the intersection and was traveling approximately nineteen miles per hour at impact. After Randle rested his case, Allen presented the testimony of Mr. Newell Knight, who opined that Mrs. Randle did *not* stop before entering the intersection and that her speed at impact was approximately thirty-five miles per hour. When Randle recalled Dr. Watkins to rebut Mr. Knight's testimony, the trial judge refused to allow Dr. Watkins to testify further.

██ Rebuttal evidence is evidence tending to refute, modify, explain, or otherwise minimize or nullify the effect of the opponent's evidence. *Board of Education v. Barton*, 617 P.2d 347, 349 (Utah 1980). Dr. Watkins' proffered testimony was proper rebuttal evidence because its purpose was to minimize the effect of Mr. Knight's testimony and undermine the bases of his conclusions.

██ Randle sought to present evidence rebutting Mr. Knight's testimony for two reasons. First, Mr. Knight had testified to matters not addressed by Dr. Watkins, such as the angle at which Mr. Ellis was able to see Mrs. Randle's car from I-215.

Second, Mr. Knight testified on the issue of whether Mrs. Randle stopped at the stop sign, a crucial point in determining the comparative fault of Mrs. Randle and Allen.

██ Allen argues that the trial court properly excluded the rebuttal testimony as repetitive. As a general rule, testimony presented for the purpose of rebuttal should be admitted, even if the rebuttal is somewhat repetitive of testimony on issues addressed during the case-in-chief. *Workman v. Henrie*, 71 Utah 400, 266 P. 1033, 1036 (Utah 1928); *see also United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974); *Steward v. Atlantic Ref. Co.*, 240 F.2d 715 (3d Cir.1957); *State v. Hewitt*, 73 Idaho 452, 254 P.2d 677, 680 (1953). *See generally* Michael H. Graham, *Handbook of Federal Evidence* §§ 611.3, 611.13 (2d ed. 1986); 29 Am.Jur.2d *Evidence* §§ 251, 269 (1967). Here, the purpose of Dr. Watkins' testimony was to rebut Mr. Knight's testimony, not to rehash Dr. Watkins' previous testimony. Randle's initial questions, while covering some of the same material, were intended to provide the basis, and otherwise set the stage, for Dr. Watkins' rebuttal.

Allen finally contends that the trial court properly excluded the rebuttal testimony because it should have been presented during Randle's case-in-chief. That, however, was not possible because Randle heard Mr. Knight's testimony for the first time after he had rested his case.

Reversed and remanded for a new trial.

HALL, C.J., and DURHAM, J., concur.

HOWE, Associate Chief Justice, concurring and dissenting:

I concur in all parts of the majority opinion except in part IIIA, dealing with the unavoidable accident instruction. As to that portion, I partially dissent. I cannot now join the holding that it is never proper to give an unavoidable accident instruction or in the wholesale overruling of all of our cases which hold otherwise.

Neither party has adequately briefed this particular issue on appeal. Utah R.App.P. 24(a)(9); *see Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 461 (Utah 1993). The briefs include only short, superficial statements as to the appropriateness of the instruction. Even appellants do not argue that the instruction should never be given. In view of that void, it seems hasty to reach the majority's sweeping conclusion. While I agree that the giving of the instruction in this case was erroneous for the reasons stated by the majority, there may be cases where it would be proper if there is evidence supporting a theory of unavoidable accident.

The majority concedes that sometimes accidents do happen without the negligence of anyone. In those cases, it would seem to me that an unavoidable accident instruction might well be of assistance to the jurors in clarifying their options as they deliberate. This issue should be left open for another day when it has been thoroughly briefed and argued.

ZIMMERMAN, J., concurs in the concurring and dissenting opinion of Associate Chief Justice HOWE.