# E. B. WICKS CO. v. MOYLE.

No. 6463.  Decided May 13, 1943.  (137 P. 2d 342.)

*Moyle, Richards & McKay,* of Salt Lake City, for appellant.

*Willard Hansen, D. N. Straup, Joseph R. Haas,* and *Stewart M. Hanson,* all of Salt Lake City, for respondent.

HOYT, District Judge.

This is an action brought by plaintiff (respondent) to recover a real estate broker's commission alleged to be owing by defendant (appellant) for services claimed to have been rendered by plaintiff in procuring a lease of a garage building owned by defendant. The defendant answered, denying liability and counterclaimed for damages for breach of warranty of agent's authority. From a judgment in favor of plaintiff, defendant appeals, alleging that the court erred in its findings of fact and that the judgment is contrary to the evidence and the law. There is no substantial conflict in the evidence. It shows the following facts: The defendant was the owner of a garage building in Salt Lake City, which, at the time of the transaction between plaintiff and defendant, was under lease to and occupied by the Ballard Motor Company. This lease will be referred to as the Ballard lease. Its expiration date was April 30, 1940. Henry D. Moyle, a brother of the defendant, was defendant's agent and had been authorized to negotiate for a new tenant of the premises in case the Ballard Motor Company did not renew its lease. In July, August and September, 1939, he had some negotiations with L. H. Brockbank, manager of the Lyman Motor Company relative to a lease of the property and was given to understand that the company might be interested in a lease. On January 25, 1940, Manford Shaw, vice president of the plaintiff company, together with one of its salesmen, Martin Brixen, visited Henry D. Moyle

and informed him that it had a prospective tenant for the building. Mr. Moyle informed them that the building was for rent in case the Ballard lease was not renewed. It is not shown definitely by the evidence whether the date of expiration of the Ballard lease was mentioned. Mr. Moyle informed them that he had been negotiating with the Lyman Motor Company. He testified that Mr. Shaw and Mr. Brixen gave him to understand that their prospective tenant was not the Lyman Motor Company. Mr. Moyle gave them the address of the defendant, Walter G. Moyle, in Washington, D. C., and they thereafter wrote defendant informing him that they had a prospective tenant for the premises who would rent the premises "at the expiration of the present lease which, we understand, is April 1, 1940, or as soon thereafter as the necessary repairs could be made." The defendant refused to accept the proposition contained in that letter and notified the plaintiff that his brother Henry D. Moyle was authorized to represent him in negotiations for a lease. It appears rather conclusively from the evidence that neither the defendant Walter G. Moyle nor Henry D. Moyle at any time informed the plaintiff that the Ballard Lease would terminate on April 1. On February 1, 1940, Mr. Shaw telephoned Henry D. Moyle who was then in Spokane, Washington, and informed him that he had a client who would take a five year lease of the garage premises at a rental of $550 per month, the lessor to make improvements amounting to $1500. In that conversation Henry D. Moyle was informed for the first time that the client was the Lyman Motor Company. Thereupon he objected to paying any broker's commission, claiming that he had been negotiating with that company. He was informed by Mr. Shaw that the Lyman Motor Company, or its manager, Mr. Brockbank, had appointed the plaintiff company its agent and that if Mr. Moyle wanted to do business with them at all he would have to do it through the plaintiff. Thereupon Henry D. Moyle sent to the plaintiff the following telegram:

"You are authorized to offer building now occupied by Ballard Motor Company at $550 per month rental five year lease. Lessor to make $1500 improvements. Pay you $600 commission. Form of lease to follow generally present Ballard lease."

On the same day the plaintiff company sent a wire to Henry D. Moyle as follows:

"Client accept offer as per your telegram today. Have deposit."

The authorization which the plaintiff then had from the Lyman Motor Company was a letter addressed to plaintiff as follows:

"We hereby agree to lease the premises at 587 South Main Street, now occupied by the Ballard Motor Company, but excluding the gas station in the corner, for a period of five years, at monthly rental of $550. It is further understood and agreed that the lessor will spend $1500 in repair and improvement on building. We hereby agree to enter into a lease as above outlined with occupancy to begin on April 1, 1940, or sooner if available, the lessor to have a reasonable time to make the necessary improvements and repairs. We hereby give you a check for $550 for the first month's rent, said rental money to be turned over to the lessor upon our signing of the lease."

When Henry D. Moyle returned to Salt Lake City a day or two later he prepared a lease embodying terms in accordance with his telegram to plaintiff and substantially following the form of the Ballard lease but providing for the beginning of the term on May 1, 1940. This was submitted by plaintiff to the Lyman Motor Company. It refused to sign the lease. The reason for refusal, according to testimony of Mr. Brockbank, was that the lease "wasn't in accordance with what we demanded and so we rejected it." It appears from the evidence that the Lyman Company lease on premises then occupied by it, expired May 1, 1940, and that it required time to remove prior to that date. Thereafter on February 29 the Lyman Motor Company addressed a letter to the defendant and to the plaintiff company in which it stated that it had made an offer to lease the garage property referred to herein for a term of five years begin-

ning April 1, that the offer had not been accepted and that the Lyman Motor Company demanded return of its check of $550 which had been deposited with the plaintiff. Upon receipt of a copy of this letter, Henry D. Moyle, defendant's agent and attorney, sent a letter to the Lyman Motor Company and to the plaintiff, reciting the contents of the telegrams of February 1, above mentioned, and advising both companies that the defendant would hold the motor company and the plaintiff liable for breach of the contract embodied in these telegrams. Subsequently the attorney for the Lyman Motor Company negotiated with Henry D. Moyle relative to a lease and a lease was agreed upon between them and duly executed by the defendant and the Lyman Motor Company providing for a five year term beginning April 1, 1940, at a monthly rental of $550, the defendant to allow $1,500 for improvements. The lease was however made subject to the unexpired lease to the Ballard Motor Company and further provided that if the Ballard Motor Company would remove by April 1 the defendant would cancel one month's rental, which under the Ballard lease was $650, and that the Lyman Company rental should begin May 1. The lease to the Lyman Company also provided that the defendant would make repairs to the furnace in the building in addition to $1,500 allowed for improvements. The other terms of the lease were substantially the same as the Ballard lease.

The defendant (appellant) contends that the lease which was finally negotiated with the Lyman Motor Company was substantially different than the lease agreed upon between plaintiff and defendant by the telegrams upon which the plaintiff relies. The plaintiff on the other hand asserts that the lease entered into between the Lyman Motor Company and the defendant was in accordance with the agreement represented by the telegrams and that plaintiff is therefore entitled to its broker's commission.

The trial court upheld the contention of the plaintiff and granted judgment in its favor. In this we think the court

erred. The plaintiff had notice of the existing lease to the Ballard Motor Company. That lease expired April 30. Plaintiff asserts that it understood that the lease expired April 1, but fails to present any evidence of any representation by the defendant or any agent of the defendant that the lease expired prior to April 30. The defendant and his agent Henry D. Moyle each testified that they had not at any time informed the plaintiff that the Ballard lease expired prior to April 30. Plaintiff's agents Shaw and Brixen each admitted that they made no inquiry as to the expiration date. While the telegram from Henry D. Moyle did not mention a date for commencement of the new lease, it did refer to the existing Ballard lease and, in view of the numerous references to that lease in the previous negotiations between the parties, the plaintiff must be charged with notice that the defendant intended the new lease to begin at the expiration of the Ballard lease. The telegram from Henry D. Moyle therefore should be construed as authorizing the plaintiff to procure a lease beginning May 1 and not April 1. The letter from the Lyman Motor Company to the plaintiff authorized plaintiff to procure a lease for it beginning April 1 and not May 1. The lease which was finally executed between the Lyman Motor Company and the defendant required defendant to make furnace repairs which were not within the contemplation of either the defendant or the plaintiff at the time of the exchange of telegrams on February 1. These repairs as shown by the evidence amounted to $578.34. This fact, and the fact that the defendant was required to cancel $650 in rent owing by the Ballard Motor Company for the month of April and to allow the Lyman Motor Company to occupy the building rent-free during that period, are such substantial departures from the proposal which we must consider to have been intended by Henry D. Moyle at the time of the exchange of telegrams referred to as to bar plaintiff's claim to a broker's commission.

In view of the undisputed facts shown by the evidence we think the court erred in its finding that the plaintiff pro-

cured the Lyman Motor Company as a tenant of the defendant, also in its finding that that company was ready and willing to lease the premises upon the terms upon which the defendant had authorized the plaintiff to procure a tenant for the defendant, also in its finding that the defendant refused to execute a lease upon the terms and conditions upon which defendant had authorized the plaintiff to procure a tenant, also in its finding that the defendant entered into an agreement with the Lyman Motor Company to lease the premises substantially upon the same terms on which the defendant had authorized the plaintiff to procure a tenant for the premises, also in its finding that it was through the services of plaintiff that the Lyman Motor Company and defendant were brought together which resulted in the leasing of the premises by the defendant to the Lyman Motor Company.

The plaintiff's action is based upon the offer embodied in the telegram of February 1 from Henry D. Moyle. The plaintiff cannot recover unless he brings his case within the terms of that offer. Plaintiff's client refused to execute a lease upon terms which we must consider to be embraced within that offer. The plaintiff is therefore not entitled to a broker's commission.

"An agent whose compensation is conditional upon his procuring a transaction upon specified terms is not entitled to such compensation if, as a result of his efforts a transaction is effected on different or modified terms, although the principal may thereby benefit." Restatement, Law of Agency, § 447.

"A broker is never entitled to commissions for unsuccessful efforts. The risk of a failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions." *Sibbald* v. *Bethelehem Iron Co.*, 83 N. Y. 378, 33 Am. Rep. 441.

"The line of demarcation between the principles applying to the rights of a broker under special contract and to his rights under a general employment is clear and distinct. As stated in *Karr* v. *Moffett*, 105 Kan. 692, 185 P. 890: 'The ordinary rule that a real estate agent is entitled to his commission when he procures a purchaser who is ready, willing, and able to buy, or when he brings a buyer and seller together who make a bargain on different terms than those theretofore dictated to the agent, does not apply when the agent's commission is governed by a special contract between him and his principal.'" *Watson* v. *Odell*, 58 Utah 276, 198 P. 772, 775, 20 A. L. R. 280.

In this case the plaintiff relies wholly upon a special contract. He has failed to show performance of that contract. He cannot recover a commission by reason of the fact that a lease was subsequently executed between the defendant and the prospective tenant with whom he had been negotiating, where it is shown that his client lawfully refused to execute a lease according to the terms of a defendant's contract with plaintiff. This is not a case where the broker had procured a binding agreement for a lease in accordance with defendant's offer. The authorization given by Lyman Motor Company to plaintiff to procure a lease beginning April 1 could not have been enforced by defendant for a lease beginning May 1. The loss of $650 in rental for the month of April is sufficiently substantial to require the holding that the defendant's offer was not accepted by plaintiff's client and that plaintiff is not entitled to a commission.

Referring now to defendant's assignment that the trial court erred in its findings No. 8 and 9 relative to defendant's counterclaim, it must be conceded that these findings are loosely worded and contain statements not supported by the evidence. There appears however to be a fairly definite finding against the defendant on the material allegations of his counterclaim and we believe such finding is sustained by the evidence. The defendant alleges, in paragraph 2 of his counterclaim, that the plaintiff for and on behalf of its alleged principal entered into a written agree-

ment to lease the garage premises from the defendant for a period of five years commencing May 1, 1940, at a monthly rental of $550 per month; that plaintiff at the time of entering into said agreement was not authorized by its alleged principal to enter therein, though plaintiff represented and warranted that it was so authorized; that plaintiff and its principal thereafter refused to perform such lease. The court's finding No. 8 recites that

"The court further finds that the allegations contained in paragraph 2 of the defendant's amended counterclaim to the effect that the plaintiff for or on behalf of any principal or person other than the defendant had entered into any written or oral agreement or otherwise to lease from the defendant the premises in question for a period of five years, or for any time, or at a rental of $550 per month, or for any amount, are false and untrue and that no agreement whatever, written or oral, was entered into by the plaintiff, as in said paragraph 2 alleged."

If we assume that the plaintiff's agent, Shaw, at the time of sending his telegram to Henry D. Moyle on February 1, understood and believed that the Ballard lease terminated April 1, then it is obvious that Shaw did not intend to represent or warrant that his client would execute a lease beginning May 1. There is no specific finding as to the belief of Shaw on this point, but he testified that it was some time after the exchange of telegrams with Moyle that he first learned that the Ballard lease terminated May 1. It seems probable therefore that, at the time he sent his telegram, he acted upon the belief that the Ballard lease terminated April 1. If so, there was no common intention of meeting of minds between Shaw and Moyle and hence no contract to sustain either the plaintiff's complaint or the defendant's counterclaim. The burden of proof to establish his counterclaim was upon defendant. We think he failed to show such a meeting of minds between plaintiff's agent and defendant's agent on the terms of the proposed lease as to constitute a contract.

"In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement, although it is not necessary that all of the terms of the contract be settled by a single act, but the parties may settle on one term at a time, and their contract becomes complete when the last term is agreed on." 17 C. J. S., Contracts, § 31, p. 359.

The general finding of the court that plaintiff did not agree for its alleged principal to enter into a lease upon the terms as set forth in defendant's counterclaim is therefore justified and the judgment dismissing the counterclaim should be upheld.

The case will be remanded with directions to the trial court to recast its findings of fact, conclusions of law and judgment in accordance herewith. Costs to appellant.

LARSON, McDONOUGH, and MOFFAT, JJ., concur.

WOLFE, Chief Justice (concurring).

I agree that the frequent references made to the Ballard lease put the respondent on notice that Moyle did not intend to authorize respondent to make a lease which would begin prior to the expiration of the Ballard lease. The offer was silent as to the date when the proposed lease was to begin. Since the respondent had notice of Moyle's intention in this regard, it either should not have acted until the date had been made more certain or it should have read into the offer the date of the expiration of the Ballard lease.

This was a special offer. Before the respondent would be entitled to the $600 commission, it had to bring itself within the conditions stated in the offer. The offer which the respondent procured from Lyman Motor Company was not an acceptance of the special offer made by Moyle, but was, in fact, a counter offer which constituted a rejection of

Moyle's offer. The negotiations between Moyle and Lyman Motor Company which were being carried on through the respondent broke down. Lyman Motor Company demanded the return of its deposit and withdrew from the transaction and abandoned the proposed lease. Subsequently Moyle and Lyman Motor Company reopened negotiations and were able after Moyle made certain substantial concessions to get together on a lease beginning on April 1st. This April 1st lease was not the lease which the respondent was authorized to make for Moyle; nor was it substantially the same lease proposed in the Lyman Motor Company counter offer. Since the respondent had not complied with the conditions of the special offer, it was not entitled to the commission, even though Moyle reopened the negotiations and made this April 1st lease with the respondent's customer, the Lyman Motor Company. The general rule in this regard is stated as follows in 12 C. J. S., Brokers, § 86, pp. 196, 197:

"* * * the broker is not entitled to a commission on a transaction consummated by the principal where the contract of employment requires the broker to render a specific service to earn a commission and he has not rendered that service; his right to a commission depends on a condition which has not been waived or fulfilled, such as a sale at a certain price; or where, by reason of the abandonment or failure of his negotiations, or otherwise, he is not the procuring cause of the transaction, * * *."

See, also, *Backman* v. *Gaudalupe Realty Co.*, 78 Cal. App. 347, 248 P. 296; *Holland* v. *Flash*, 20 Cal. App. 686, 130 P. 32; *Case* v. *Harrison*, 192 Miss. 531, 6 So. 2d 582; 8 Am. Jur. 1101.

In the instant case the respondent did not comply with conditions set out in the offer nor was the respondent the procuring cause of the sale. Its negotiations with Lyman Motor Company fell through. Lyman Motor Company and Moyle had been dealing directly with each other before the appellant entered the scene. They got together only after Moyle made substantial concessions and the lease finally executed was not as favorable to Moyle as was either the proposed lease contained in Moyle's offer or the lease pro-

posed by the counter offer made by Lyman Motor Company. A different result might be reached if the counter offer procured by the respondent had been substantially the same as the offer made by Moyle. Also if Moyle had, after receiving the counter offer, merely rejected it and then gone ahead and effected with the respondent's customer a lease substantially the same as that contained in the counter offer procured by the respondent, it might be held that the respondent would have been the procuring cause of the lease and hence be entitled to the commission. But in the instant case neither of these situations exist. The counter offer was substantially different from the original Moyle offer and the final lease agreement executed by Moyle and Lyman Motor Company was substantially different from the counter offer. I, therefore, concur with the result reached by Judge Hoyt.

PRATT, J., on leave of absence.