324 So.2d 676 (1975)
INNKEEPERS INTERNATIONAL, INC., a Delaware Corporation Doing Business in the State of Florida, Appellant,
v.
McCOY MOTELS, LTD. and McCoy Motels, Inc., Appellees.
No. 74-617.
District Court of Appeal of Florida, Fourth District.
December 19, 1975.
Rehearing Denied January 29, 1976.
*677 Steve L. Henderson of Jones, Paine & Foster, Vero Beach, for appellant.
Richard W. Bates, P.A., Orlando, for appellees.
JOHNSON, W. CLAYTON, Associate Judge.
Appellant, plaintiff in the trial court, brought suit against appellees, defendants, for damages based upon breach of an employment contract. The very able trial judge entered a final judgment after trial, before the court, finding that the appellant had failed to prove its case and from which adverse judgment this appeal was instituted.
The fact situation involved an executed contract consisting of two letters and an agreement all dated September 14, 1970. Said instruments were specific as to the nature of appellant's services and also provided for appellant to render consultation services to appellees during the construction of appellee's motel, Jet Port Inn in Orlando, Florida, and for appellant to provide for the management of the newly constructed motel for a three-year period at an annual fee of $32,500. At the time these instruments were executed, construction had not yet begun on the motel and appellee had not yet obtained the necessary financing for the construction. The exact date when the term of management would commence was intentionally left blank so that paragraph 7 of the agreement reads:
"7. Principal [appellee] agrees to make the establishment subject to the management of Innkeepers International, Inc., [appellant] on or before ____."
Appellant contended that the date in said paragraph 7 was omitted only because the date of the motel completion was not known and that the parties intended that the time of commencement of appellant's services was to be measured in relationship to the opening date. Appellee contended that said date omission occurred in paragraph 7 because appellee did not know if it would ever either have a motel or avail itself of the services of appellant as a manager and appellee intended to reserve that decision until a later time. Further, the testimony of appellee's representative officer was that he intended the instruments to be an agreement to agree at a later time as to whether the services of appellant would be utilized on the project.
On or about September 1, 1971, after construction had begun, appellant received a letter from appellee stating that appellee did not intend to use appellant's management services. Appellee's motel was completed *678 and commenced operation under another manager.
With respect to appellant's claim of damages, consisting of loss of profits, appellee contended that same were too speculative to afford recovery.
Appellees utilized and paid for certain preconstruction consulting services furnished by appellant pursuant to that part of the contract relating to consultation services.
The evidence clearly reflects that at the time of the execution of the contract, it was impractical (if not impossible) to insert a date or time for commencement of appellant's managerial services since there was no way of predicting when, indeed, whether the Jet Port Inn would commence. Discussions between the parties following execution of the contract reveal appellees' opinion that appellant's manager should be placed on the project no earlier than 90 days prior to completion, which opinion appellee described as "philosophical discussions". While the parties may have disagreed as to the exact time appellant's performance was to begin, there is no disagreement as to the fact that it would begin sometime prior to completion of the motel. Implicitly, the event on which the commencement of performance depended is the construction completion date, which construction completion condition was satisfied. Even if appellees' contention that there was no agreement as to time of commencement of performance is accepted we find that the date of commencement was a non-essential element in the minds of the contracting parties.
As a general rule, presence of blanks in a contract is fatal to the enforcement if the blanks occur in a provision dealing with an essential term of the contract. If, however, the blanks deal with non-essential terms, the contract may be enforced. 17 C.J.S. Contracts § 65 (1963).
A contract is not necessarily lacking in all effect because it expresses the idea that something is left to future agreement. An agreement to agree to do a certain specified thing, all the conditions and terms of the postponed agreement being specified, is simply an agreement in praesenti to do it. 17 AmJur.2d, Sec. 26, Contracts.
As stated by our Supreme Court in Blackhawk Heat & P. Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404, a contract should not be held void for uncertainty unless there is no other way out, and "indefiniteness must reach the point where construction becomes futile."[1]
Turning to Professor Corbin, Corbin on Contracts, Vol. 1 (1963) Sec. 95, page 400 (cited in Blackhawk, supra):
"If the parties have concluded a transaction in which it appears they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left." (This court's emphasis)
and as stated at 17 Am.Jur.2d, Contracts, Sec. 22 (cited in Blackhawk, supra):
"[T]he fact that an executed written contract contains within itself difficulties of construction about which the parties disagree does not enable the parties to contend that the minds of the parties never met, since by signing the writing the parties bind themselves to such interpretation as the court may place upon the words and symbols employed by them."
Where, as in the instant case before this court, a contract is clear and unambiguous and does not involve any absurdities or contradictions, it is the best evidence *679 of the intent of the parties, and its meaning and legal effect are questions of law for determination by the court alone, Minidoka County v. Krieger Construction Co., 88 Idaho 395, 399 P.2d 962, 17 Am.Jur.2d, Contracts, page 634 note 20 poc. part.
Other states have recognized the enforceability of contracts lacking a provision as to time of performance, Metro-Goldwyn-Mayer, Inc. v. Scheider, 75 Misc.2d 418, 347 N.Y.S.2d 755 (1972). Therein MGM had a contract with defendant which provided that the defendant would star in a pilot film for television, and if the network liked the pilot, the defendant would start a series to run up to five years. The network liked the pilot and exercised its contractual option to require MGM to produce a series. Defendant refused to appear in the series, claiming that the contract was too indefinite for enforcement and that it did not provide a date for the commencement of the defendant's services in the series. The court in finding the said contract enforceable stated that:
"the court will find and enforce a contract even though the parties have expressly left these other elements for future negotiation and agreement, if some objective method of determination is available, independent of either party's mere wish or desire. Such objective criteria may be found in the agreement itself * * *. If the contract can be rendered certain and complete, by reference to something certain, the court will fill in the gaps."
Since we find here an enforceable contract upon which appellees are liable to appellant for their proved damages we are disposed to consider appellees' further argument that the appellant suffered no damage and that the lost profit computations offered in that regard by appellant are too speculative.
We agree with appellees' general statement of the law, found in Fla.Jur. Vol. 9A, Sec. 85, Damages, that "recovery for lost profits is not generally allowed for injuries to a new business with no history of profits", however, we disagree with the application of said principle to the facts of this case in view of the appellant's firm having an established operation of some 13 years providing the same services which it contracted to perform for appellees for a definite sum. The appellant's profit under its agreement with appellees was not dependent upon the profit generated by the operation of the new motel business, but was dependent upon the contract price agreed to and stated in the contract.
Damages recoverable on breach of contract must be proved with reasonable certainty and cannot be left to speculation or conjecture. Profit may be established by showing the total cost and expenses of labor, services and materials necessary to perform the contract and then deducting that sum from the contract price. The result is the profit. Ballard v. Krause, 248 So.2d pages 234, 235, D.C.A. 4th Dist. (1971).
Applying these principles to the instant case, we find the evidence offered on behalf of the appellant is sufficient and, accordingly, the final judgment entered in favor of the appellees is reversed and the cause remanded with directions to enter judgment for appellant against appellees consistent herewith.
WALDEN, C.J., concurs.
DOWNEY, Judge (dissenting).
Appellant states in its brief that:
"There is no doubt (or argument with McCoy) that the intent of the parties to this contract is determinative and that that intent is determined not only by a construction of the terms of the contract but also by inquiring into all the facts and circumstances surrounding the transaction. Thus, testimony as to what the *680 parties thought at the time of execution is relevant although not conclusive."
Witnesses on behalf of the respective parties testified to their intention in leaving paragraph 7 of the agreement in question blank. Appellee's contention was that it was left blank for several reasons, one of which was that appellee wanted to see how appellant performed under its separate contract for consultation services during construction before appellee was committed to employ appellant as manager of the completed project.
The trial judge heard the conflicting evidence in support of the respective contentions of the parties and resolved the issue in favor of appellees. Finding support in the record for that conclusion, it seems to me we must substitute our judgment for that of the trial court in order to reverse the judgment appealed from.
Accordingly, I would affirm the judgment under review.
NOTES
[1] Justice Cardozo in Heyman Cohen & Sons., Inc. v. M. Lurie Woolen Co., Inc., 232 N.Y. 112, 133 N.E. 370, 371.