CESSNA FINANCE CORPORATION,
Plaintiff and Respondent,

v.

Sterling A. MEYER, Paul K. Hurst, and
Alma Dean McKee, Defendants
and Appellant.

No. 15117.

Supreme Court of Utah.

Feb. 16, 1978.

Nick J. Colessides, Salt Lake City, for McKee.

LaVar E. Stark, Ogden, for Hurst.

W. Jeffery Fillmore, Salt Lake City, for Meyer.

Dennis V. Haslam, Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

This case was tried before the court, sitting without a jury, on October 12, 1976. The plaintiff sued defendants on a guaranty agreement that each had signed for an indebtedness incurred by Intermountain Flight Center, Inc. (hereafter referred to as Intermountain). Intermountain defaulted on its debt and filed a petition in bankruptcy. Plaintiff repossessed the collateral and subsequently sold it, applying the proceeds to the amount due and assessing the deficiency against the guarantors.

The trial judge ruled as a matter of law that defendants' liability was based on an unlimited and continuing guaranty; that the agreement was valid; and that the unfilled blank on the contract was intended to indicate unlimited liability under the continuing guaranty. The case was tried on the sole issue as to whether or not proper notice was given of the sale of the collateral. Evidence was presented by the plaintiff on this issue, but none was offered by the defendants.

A judgment was rendered against the defendants, jointly and severally, for the total sum of $79,010.31 plus interest and costs. Defendant, Paul K. Hurst, now appeals from this judgment on the following grounds:

(1) The guaranty agreement is not enforceable because the provision limiting liability to a specific amount was left blank, and the trial court erred in ruling that the agreement was valid.

(2) Even if the guaranty is an unlimited or continuing guaranty, notice should have been given to the guarantor as to acceptance, amount of liability, and default.

It should be noted that the only evidence presented at trial went to the notice of the sale of the collateral. Notice of acceptance and amount of liability were not brought into issue in the lower court, and the record fails to disclose that appellant attempted to pursue these issues at all. In fact, appellant expressly waived his right to notice in the guaranty agreement. The court's ruling before trial went to the validity of the guaranty agreement only and it is a well settled rule that issues not raised in the lower court cannot be raised in this Court on appeal.[1] Therefore, our examination will be limited to the validity of the guaran-

1. *Thompson Ditch Co. v. Jackson*, 29 Utah 2d 259, 508 P.2d 528 (1973); *State by and through its Road Commission v. Larkin*, 27 Utah 2d 295, 495 P.2d 817 (1972); *Wagner v. Olsen*, 25 Utah 2d 366, 482 P.2d 702 (1971).

ty agreement and the adequacy of notice of the sale of the collateral.

█ Guaranty agreements are normally entered into by merchants or by commercially knowledgeable persons dealing at arm's length. Such agreements are construed by the courts in favor of their validity whenever possible; and the intent of the parties is determined both from the entire document and from the attendant circumstances.[2]

Appellant cites one Utah case in support of his claim that the amount limiting liability was an essential element to the guaranty agreement and that the failure to include this term causes the contract to fail for lack of mutual assent. That case, *Wicks v. Moyle*,[3] is not entirely on point. It stands merely for the general proposition that contractual mutual assent requires assent by all parties to the same thing in the same sense so that their minds meet as to all the terms.

Whether or not the term limiting liability was essential to the contract requires an examination of the entire agreement and the circumstances under which the agreement was entered into. The document we are concerned with here was signed by all the parties and included the following pertinent provisions:

(1) The guarantors 'guarantee . . . the prompt and unconditional payment of each and every installment when due.'

(2) 'Guarantees the payment on demand of the entire unpaid balance . . .'

(3) Guarantees payment of 'any indebtedness for which debtor may be obligated to CFC . . . arising out of the purchase of retail notes and/or instruments. . . .'

(4) 'This guaranty is a continuing guaranty . . . and shall include any indebtedness of debtor . . . or any indebtedness for which debtor may be obligated [to Cessna] . . . or any other obligation of debtor . . . incurred from the date hereof until notice of withdrawal . . .'

(5) Guarantors agree their liability is both joint and several.

This guaranty was entered into because Intermountain needed financing in order to operate its business and Cessna wanted personal guarantees for payment in the event of Intermountain's default. Appellant was the vice-president of Intermountain and a member of the Board of Directors. He, together with the other guarantors, volunteered to execute personal. guarantees in their individual capacities to make sure the needed financing would be available. The parties contemplated an open-ended financing arrangement so that Intermountain could obtain direct loans and respondent would purchase both retail and wholesale notes, assignments, and endorsements. This amounted to dealership financing, a contractual relationship that is common in normal business operations.

█ An agreement is considered to be a continuing guaranty if it contemplates a future course of dealing for an indefinite period of time, or if it intends to cover a series of transactions; and such an agreement remains effective until revoked by the guarantor.[4] Such is the situation in this case. The parties intended to have financing cover an indefinite period and, in fact, respondent did advance loans to appellant under this agreement for a few years before the default occurred. That the parties intended this guaranty to be a continuing guaranty to cover Intermountain's future indebtedness is clear from the express language in the contract to that effect. The agreement was never revoked by appellant.

█ The unfilled blank, if not essential to the understanding between the parties, may be rejected as unnecessary and mere surplusage if it appears that the omission

---

2. *Berg Agency v. Sleepworld-Willingboro, Inc.*, 136 N.J.Super. 369, 346 A.2d 419 (1975); 38 Am.Jur.2d, Guaranty, § 23.

3. 103 Utah 554, 137 P.2d 342 (1943).

4. See discussion in 38 Am.Jur.2d, Guaranty, § 23 and cases cited therein.

was intended.[5] In the instant case, the appellant was eager to obtain financing from the respondent and, therefore, volunteered to execute the guaranty agreement. The agreement was a form contract and was given to the guarantors to fill in. The guarantors did fill in all the blanks except the one that limited their liability and duly executed the document. Respondent had no obligation to limit the amount of liability; that was for the guarantors to do if they so desired. If any of them had wanted to limit his obligation, he could have done so by filling in that blank on the form agreement.

■■ The very nature of the agreement itself indicates that the guarantors did not intend to limit their liability because they hoped to continue a line of credit for an indefinite time, the amount of which could not be ascertained. The express language of the guaranty agreement leaves no doubt that the parties intended the liability to be unlimited and intended that any obligation incurred pursuant to the guaranty would be a continuing one. That was the reason the liability limitation clause was left blank; the guarantors never intended to fill it in since it was not necessary to the terms agreed upon between the parties. If a blank deals with a non-essential term, the contract is enforceable.[6] The guaranty agreement expresses the full intention of all concerned; there was no mistake or fraud, and the parties did not contemplate a limitation on liability as part of the agreement. The trial court correctly ruled that the guaranty agreement was a valid and continuing contract.

The following language is contained in the agreement between respondent and appellant:

> Guarantor consents to and agrees that liability hereunder shall not be affected by . . . [and that] nothing but full payment in cash to CFC by Debtor of the amount owed . . . and full pay-

ment of any indebtedness for which Debtor may be obligated to CFC and/or performance of any obligation of Debtor to CFC arising out of the purchase of such retail notes and/or instruments shall release Guarantor of liability hereunder.

It appears from the above provision that appellant intended to guarantee Intermountain's debt against all contingencies and that nothing short of payment in full would relieve the guarantors' liability.

■ Appellant further claims that notice of the sale of collateral was insufficient under the Utah Uniform Commercial Code. The applicable section, U.C.A., 1953, 70A–9–504, requires that notice be "reasonable." The definition of notice [7] is contained in the code as follows:

> A person . . . gives a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person 'receives' a notice or notification when
>
> (a) it comes to his attention; or
>
> (b) it is duly delivered at the place of business . . . or at any other place . . . as the place for receipt . .

The form required for this kind of notice is that which is commercially reasonable under the circumstances in absence of an express provision to the contrary.[8] The common-law definition and the definition of the commercial code are consistent with each other and consistent with usual business practices.

■ The evidence showed that certified letters, properly addressed with postage prepaid, had been mailed to Intermountain and to each of the guarantors advising them that the aircraft had been repossessed, that they had a right of redemption, and that if not redeemed by a certain date,

---

**5.** *Zeigler v. Conger*, 204 Kan. 143, 460 P.2d 515 (1969).

**6.** *Innkeeper's International, Inc., v. McCoy Motels Ltd.*, 324 So.2d 676 (Fla.D.C.App.1975).

**7.** U.C.A., 1953, 70A–1–201(26).

**8.** 38 Am.Jur.2d, Guaranty, § 102.

the aircraft would be sold. The evidence also indicated that after the initial letter had been sent, follow-up letters were likewise mailed pertaining to some of the collateral, informing the parties that they had been advertised for sale. Appellant did not contradict this evidence nor did he offer any evidence in his own behalf. This type of notice was sufficiently adequate to meet the requirements of section 70A–9–504 and was commercially reasonable under the definition of that section and under section 70A–1–201(26).

Aside from any discussion as to the adequacy of notice, it must be noted that appellant expressly waived notice of acceptance, notice of default, and "all other notices." The pertinent language is contained in the guaranty agreement as follows:

> Guarantor expressly waives notice of the acceptance of this Guaranty . . . waives notice of demand for payment, notice of nonpayment, or notice of other default . . . and *all other notices to which Guarantor might otherwise be entitled* in connection with this Guaranty of any indebtedness or obligations hereby guaranteed. [Emphasis added.]

It is a long-established principle that notice may be waived by an express provision in the terms of the contract.[9] The uniform commercial code further provides that notice of dishonor is not necessary when involving a guaranty[10] and that notice of dishonor may be waived.[11] The waiver provision signed by the appellant above covers every kind of notice that the guarantor would ordinarily be entitled to receive. Appellant was not taken by surprise; he was dealing at arm's length and intelligently and knowingly waived notice. Despite that waiver provision, however, respondent still tendered notice to make sure the guarantors were adequately and fairly informed of all aspects of the default, repossession, and sale of the collateral. In light of the waiver and respondent's subsequent fair dealing,

it appears that appellant has no basis for contending that he did not receive adequate notice in the matter.

An earlier case, *Zions v. Hurst*,[12] is dispositive of some of the issues in this case. The *Zions* case involved the same appellant who is before us in the instant matter and the facts of the two cases are nearly identical. Hurst had executed a guaranty agreement in favor of Zions Bank; and when Intermountain defaulted and subsequently filed bankruptcy, the bank sought to recover from the guarantors under that agreement. Hurst claimed that Zions had failed *to notify him of the time and place of sale* of the collateral. This Court held that Hurst had not been damaged or prejudiced by the sale and cited the general rule that a failure to notify does not release the debtor—it merely affords him credit for any loss caused by the failure to notify. This common-law rule has been codified in the Utah Uniform Commercial Code.[13]

We further held in *Zions* that the guaranty agreement would continue until revoked by written notice to the creditor and that Hurst's termination as an officer and director of Intermountain would not affect his liability under the agreement, absent a written notice from him. Hurst gave no notice of revocation either to *Zions* in the first matter or to respondent in the instant case.

We hold that the guaranty agreement was a valid and continuing one. We also hold that the notice of sale was sufficient and no prejudice resulted to appellant as a consequence of the sale or as to the type of notice tendered.

The judgment is affirmed. Costs are awarded to respondent.

WILKINS and HALL, JJ., concur.

MAUGHAN, J., concurs in result.

---

9. 38 Am.Jur.2d, Guaranty, § 100.

10. U.C.A., 1953, 70A–3–416.

11. U.C.A., 1953, 70A–3–511.

12. Utah, 570 P.2d 1031 (dec. Oct. 14, 1977).

13. U.C.A., 1953, 70A–9–507.

CROCKETT, Justice (concurring, but with reservation):

I concur on the ground that it appears that notice was in fact given. However, I reserve therefrom agreement that a party can avoid or circumvent the statutory requirement to give notice by inserting a covenant of waiver in the contract. I realize that rights which exist strictly between individuals can usually be waived by them, when done so advisedly. But it is generally held that where covenants are exacted, which purport to waive rights that are conferred upon the public as a matter of public policy, such covenants are generally not enforceable. See 17 Am.Jur.2d 531 and cases there cited.

The requirement of notice is a declaration of policy for the protection of the public and in the interests of justice. It should not be avoided or circumvented by permitting the party upon whom that duty rests to exact covenants of waiver of that statutory duty. I have an aversion to any such self-protective covenants as the waiver of notice, etc. "and all other notices to which the Guarantor might otherwise be entitled . . . ." If this can be done, we may be sure that such contracts, prepared by financing institutions, will contain such provisions and thus, for practical purposes, eliminate the requirements of the statute. At the very least, I think such a covenant should not be enforceable unless it is proved that that particular covenant was expressly brought to the attention of and agreed to by the party to be bound thereby. See statement in *Christopher v. Larson Ford Sales*, Utah, 557 P.2d 1009 (1976).