**Nicholas C. VASELS, as Trustee of Worldwide Investments Trust, Plaintiff, Appellant, and Cross-Respondent,**

v.

**John LoGUIDICE and Johnny Judice, Defendants, Respondents, and Cross-Appellants.**

No. 860008–CA.

Court of Appeals of Utah.

Aug. 18, 1987.

Michael W. Park, Park, Braithwaite & Eves, Cedar City, for plaintiff, appellant and cross-respondent.

Thomas M. Higbee, Chamberlain & Higbee, Cedar City, for defendants, respondents and cross-appellants.

Before JACKSON, ORME and BENCH, JJ.

## OPINION

JACKSON, Judge:

Vasels, the seller, appeals a judgment of the Fifth District Court that held a purported land sale contract unenforceable and ordered him to return a $50,000.00 payment to the buyers, LoGuidice and Judice. Buyers cross-appeal the trial court's denial of prejudgment interest on the $50,000.00. We affirm.

The parties signed an eleven-page document, captioned "Escrow Instructions," on June 3, 1981. It contained a metes and bounds description of approximately 27 acres of land, but clearly provided that the described acreage was to be split into four parcels. The document's purchase provisions related only to "Parcel 1," for which the recited purchase price was $1,000,-000.00, although the buyers were given an option to purchase the remainder of the described acreage. Nowhere in this document is there a description of Parcel 1 or any means or reference to extrinsic evidence by which a description could be ascertained. Instead, the description of Parcel 1 was to be determined thus: "Seller shall deliver into escrow the legal description covering Parcel 1, prior to the close of escrow on Parcel 1. Said legal description is to be approved by all parties in writing." The seller was to perform several obligations prior to the closing on Parcel 1, set by the written agreement for the earlier of January 31, 1982 or the sale of 42 of the 60 condominiums to be built on Parcel 1 by buyers. Buyers were to make, and did in fact make, a $50,000 payment into escrow upon signing the document. In accordance with its provisions, this money was disbursed to the seller on June 19, 1981, because the buyers did not elect to cancel the deal before then.

For reasons irrelevant to our disposition of this appeal, the buyers did not make the second major payment due on January 31, 1982. Vasels then sued, claiming breach of the contract and seeking to retain the $50,-000 payment and to recover damages for expenditures made in anticipation of the buyers' performance. LoGuidice and Judice counterclaimed, alleging that the seller had breached the contract or, alternatively, that the contract was invalid under the statute of frauds and too vague to be enforced.

The issues presented on appeal are (1) whether the writing signed by the parties is sufficient to satisfy the requirements of our statute of frauds, Utah Code Ann. § 25–5–3 (1984) and, if not, (2) whether the buyers are entitled to prejudgment interest on the $50,000 payment they made to Vasels.

The trial judge found that: the documentary evidence containing the agreement of the parties lacked a legal description of Parcel 1, the property to be conveyed; there was no agreed upon or intended description of Parcel 1 when the agreement was executed; and the size, shape and description of Parcel 1 was left to the subsequent agreement of the parties. The court further found that Vasels had proffered an untimely proposed legal description of Parcel 1, after January 31, 1982, that was never approved by the respondent buyers.

Based on those findings, the court concluded as a matter of law that the document was invalid and unenforceable under the statute of frauds because the land to be sold as Parcel 1 was left to the parties' future agreement. The court also concluded the sale document was too vague, incomplete, and indefinite in other respects to be enforced, but we need only address the dispositive matter of the insufficiency of the property description in the sale document.

The relevant portion of the statute of frauds provides:

Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made or by his lawful agent thereunto authorized in writing.

Utah Code Ann. § 25–5–3 (1984). "It is fundamental that the memorandum which is relied upon to satisfy the statute of frauds must contain all the essential terms and provisions of the contract." *Birdzell v. Utah Oil Refining Co.*, 121 Utah 412, 416, 242 P.2d 578, 580 (1952). The identity of the property to be sold is unquestionably an essential term of an enforceable land sales contract. *See, e.g., Barnard v. Barnard*, 700 P.2d 1113 (Utah 1985); *Davison v. Robbins*, 30 Utah 2d 338, 517 P.2d 1026 (1973); *Pitcher v. Lauritzen*, 18 Utah 2d 368, 423 P.2d 491 (1967).

In *Davison*, the land sale document signed by the parties was a standard printed form, designed for California but used in a Utah transaction as follows:

In the space provided for a description of the property, the following was written: legal description to be prepared by licensed civil engineer after survey ordered by seller and paid for equally by both parties hereto, land being sold consists of approx. 150 acres selling at $90.00 per acre on the exact net acreage delivered in escrow.

In a space provided for other terms, the following was written:

Property in question is briefly described in preliminary title report No. U–102434, Schedule A, issued Oct. 24, 1970 by Stanley and Sons, Inc. of Heber City, Utah, *less any acreage reserved by seller. Offer contingent upon buyers approval of net acreage description* and grant deed executed and deposited in escrow. [Emphasis added.]

*Davison v. Robbins*, 30 Utah 2d at 340–341, 517 P.2d at 1028. The Utah Supreme Court held that, because the location and description of the land to be conveyed was subject to the future agreement of the parties, the writing did not constitute a valid, enforceable contract. *Id.*, 30 Utah 2d at 341–42, 517 P.2d at 1028–29.

In a similar case cited in *Davison*, the landowner intended to sell 30 of his 189 acres. The parties' written agreement described the land being sold only as the "30 acres in North Logan as indicated by map...." Since the buyer was shown no such map when the agreement was signed, if one existed, the Court concluded that the agreement was too uncertain to be enforced as a land sale contract. *Pitcher v. Lauritzen*, 18 Utah 2d 368, 423 P.2d 491 (1967). *See also Rhodes v. Wilkins*, 83 N.M. 782, 498 P.2d 311 (1972) (purported option agreement to buy 1.862 acres from 10 acre tract unenforceable under statute of frauds absent description in the agreement or reference to any data or means by which the particular 1.862 acres could be identified); *Sparks v. Douglas County*, 39 Wash.App. 714, 695 P.2d 588 (1985) (insufficient legal description, referring to footage from survey line where no survey had been done, makes deed unenforceable under statute of frauds).

In contrast, and as distinguished by the Court in *Davison*, the written agreement of the parties in *Calder v. Third Judicial Dist. Court*, 2 Utah 2d 309, 273 P.2d 168 (1954), gave the vendee the exclusive right to select within a given time 200 acres from a larger tract that was clearly described. Because the writing thus provided a definite means by which the description of the land could be determined, without any further agreement of the parties, it was held to constitute a valid and enforceable contract.

The results in these cases flow naturally from the basic principle that the mutual assent of the parties is essential to create a binding contract. *Bunnell v. Bills*, 13 Utah 2d 83, 368 P.2d 597 (1962); *E.B. Wicks Co. v. Moyle*, 103 Utah 554, 137 P.2d 342 (1943). In the case before us, the parties left the description of Parcel 1 open and "to be approved by all the parties in writing." The identity and location of the land to be conveyed was subject to their subsequent agreement. Here, as in *Davison*, the parties' written agreement shows undisputably that the requisite meeting of the minds on this essential term did not take place. Thus, no contract was formed, and the buyers were entitled to the return of their payment. The trial judge correctly ruled that the document was not a contract that could be enforced under our statute.

The trial judge denied the buyers' request for prejudgment interest on that $50,000.00 payment from June 3, 1981, based on the fact that Vasels had offered to return them the money in August, 1981, when problems in performance began to surface, but they had declined.

LoGuidice and Judice have duly cross-appealed the interest issue, but avoid reference to their seeming inequitable conduct of refusing return of their money. They claim only that they are entitled to prejudgment interest as a matter of law, relying solely on the following statement of the Utah Supreme Court:

> [T]he law in Utah is clear, viz: where the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time and not from the date of judgment.

*Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah 1977) (footnote omitted), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977).

 Prejudgment interest represents an amount awarded *as damages* due to the opposing party's delay in tendering the amount owing under an obligation. *L & A Drywall, Inc. v. Whitmore Constr. Co.*, 608 P.2d 626, 629 (Utah 1980). In *Bjork*, as in numerous other cases declaring a party's entitlement to prejudgment interest as a matter of law, the interest accrued as damages arising out of a valid contract determined to have been breached by the other party. *See, e.g., Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730 (Utah 1985); *Jack B. Parson Constr. Co. v. State*, 552 P.2d 107 (Utah 1976).

 Here, the parties all assumed that they had a valid, binding contract. The buyers' $50,000 payment to the seller, nonrefundable under the explicit terms of their written agreement, was based on this assumption. But, within a short time, both sides had serious doubts about the deal. The seller eventually sued to enforce the purported contract and to collect damages for its breach. Instead, the trial court agreed with the buyers' legal theory that the parties did not have a contract and entered judgment in their favor on this basis. Accordingly, cross-appellants were not entitled to damages. The trial court's judgment and order requiring Vasels to return their payment was not an award of damages entitling them to prejudgment interest as a matter of law.

The judgment below is affirmed. The parties are to bear their own costs on appeal.

ORME and BENCH, JJ., concur.