2008 UT App 374

**Clyde A. RHODES and Randy B. Birch, Plaintiffs and Appellants,**

v.

**DEPARTMENT OF TRANSPORTATION, Dian McGuire, and Craig Fox, Defendants and Appellees.**

No. 20070096–CA.

Court of Appeals of Utah.

Oct. 23, 2008.

Randy B. Birch, Salt Lake City, for Appellants.

Mark L. Shurtleff, Atty. Gen., and Brent A. Burnett, Asst. Atty. Gen., Salt Lake City, for Appellees.

Before Judges THORNE, McHUGH, and ORME.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 Clyde A. Rhodes and Randy B. Birch (Plaintiffs) appeal from the district court's entry of summary judgment in favor of the Utah Department of Transportation (UDOT), Dian McGuire, and Craig Fox (collectively, Defendants). We reverse the district court's judgment and remand this matter for further consideration.

## BACKGROUND

¶ 2 UDOT was the record owner of approximately 6.7 acres of property located at 4795 North Highway 40 in Heber City (the Property). On May 21, 2004, UDOT sold Rhodes a prefabricated house that was located on the Property. Plaintiffs then entered into an agreement whereby Birch purchased the house from Rhodes, along with any interest that Rhodes might later acquire in the Property.

¶ 3 Plaintiffs began negotiating with UDOT to acquire the Property. UDOT, through its representatives, McGuire and Fox, orally agreed that it would sell the Property to Plaintiffs once a survey was completed and an easement issue resolved. UDOT wrote various letters over the next few months expressing its continued intention to sell the Property to Plaintiffs.

¶ 4 Plaintiffs argue that they undertook various actions relating to the Property in reliance on UDOT's representations and expressed intent. With UDOT's knowledge

and encouragement, Plaintiffs submitted a zoning change request to Wasatch County in July 2004. In August 2004, Birch sold his existing Heber City home and moved into the house located on the Property. After moving into the house, Birch made various improvements to the house and the Property, including cleaning up debris and garbage on the Property; cleaning and maintaining the house; repairing the sprinkler system; building a shed; remodeling the house to add two basement bedrooms; adding French doors to the house; installing a playset; and spraying the Property for weeds.

¶ 5 On January 25, 2005, Plaintiffs met with McGuire and Fox to finalize the terms of the sale. The parties allegedly made various oral agreements at this meeting. UDOT represented that, pending an upcoming survey, it estimated that it would be able to sell an unspecified 4.5 acres of the Property to Plaintiffs. Plaintiffs agreed to buy however much of the Property was available for $45,000 an acre. Plaintiffs also agreed to maintain the Property before closing, to apply for financing, and to pay $10 per month rent for the raw land with accrued rent to be paid at closing. McGuire made handwritten notes that contained a summary of these terms as well as the notation "subject to approval." McGuire also provided Plaintiffs with a blank copy of UDOT's standard contract and indicated that the contract form would be completed consistent with the parties' negotiations and mailed to Plaintiffs within a few days. At the end of the meeting, the parties shook hands and acknowledged that it was good to have the deal done.

¶ 6 Over the next few months, the parties had repeated phone and email contacts regarding the sale. Birch, an attorney, offered to prepare the contract himself, consistent with the parties' negotiations. McGuire declined Birch's offer and again stated that she would prepare the standard form contract. On April 14, 2005, in response to an email query, McGuire emailed Birch and stated, "I promise to update you in the next few days. We are almost through with the Feds and all is well." Sometime thereafter, UDOT completed the survey that was discussed at the parties' January meeting.

¶ 7 On Friday, June 24, 2005, at approximately 7:00 p.m., McGuire telephoned Birch and advised him that UDOT had received another offer for the Property. Despite Plaintiffs' claim that there was already a contract for the sale of the Property to them, UDOT refused to complete the sale of the Property to Plaintiffs because of the new offer.

¶ 8 Plaintiffs sued Defendants over the failed deal, alleging that UDOT was in breach of contract and seeking declarations of estoppel, quiet title, and specific performance. Plaintiffs also sought damages against McGuire and Fox for intentional interference with a contract. The district court granted Defendants' motion for summary judgment. The district court concluded, based on the undisputed facts, that Plaintiffs did not have an enforceable contract for the sale of the Property because the property description in the alleged agreement was inadequate to satisfy the statute of frauds; that neither principles of estoppel nor the doctrine of part performance precluded Defendants from asserting a statute of frauds defense; that Plaintiffs had no legally enforceable interest in the Property to support their quiet title claim; and that Fox and McGuire could not be sued for interfering with an unenforceable contract. Plaintiffs appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Plaintiffs argue that summary judgment was inappropriate because the various documents created by the parties during their negotiations satisfy the statute of frauds; Defendants are barred from asserting a statute of frauds defense either because of estoppel or because of Plaintiffs' part performance; a quiet title action was an appropriate avenue for Plaintiffs to determine their interest in the Property; and McGuire and Fox do not enjoy governmental immunity against Plaintiffs' contractual interference cause of action. We review a trial court's grant of summary judgment for correctness, according no deference to the trial court's legal conclusions. *See Shaw Res. Ltd., L.L.C. v. Pruitt, Gushee & Bachtell, PC,* 2006 UT App 313, ¶ 20, 142 P.3d 560.

## ANALYSIS

¶ 10 We hold that the district court erred in its application of the statute of frauds in its summary judgment ruling.[1] The district court ruled that Plaintiffs had not satisfied the statute of frauds because the collection of writings they presented did not specifically identify the parcel of land to be sold. We disagree.

¶ 11 The writings Plaintiffs presented all reference state-owned property located at 4795 North Old Highway 40 in Heber City. However, it is uncontested that UDOT would not be selling the entire 6.7–acre parcel to Plaintiffs. Rather, UDOT was going to trade some unspecified portion of the Property to third parties to clear a cloud on the title and obtain other property needed for future road projects. The contract alleged by Plaintiffs is for the sale of the *remainder* of the Property after those trades were complete.

¶ 12 On appeal, Plaintiffs argue that the address description of the full, pre-trade parcel is sufficient to identify the portion of the Property to be sold under the agreement. We agree with Plaintiffs that the description of the full, 6.7–acre parcel, as reduced by trades to be conducted by UDOT without Plaintiffs' participation or approval, sufficiently identifies the land to be sold for purposes of the statute of frauds.

¶ 13 Of the cases relied upon by the district court, the two most applicable to the present situation are *Vasels v. LoGuidice*, 740 P.2d 1375 (Utah Ct.App.1987), and *Davison v. Robbins*, 30 Utah 2d 338, 517 P.2d 1026 (1973). In *Vasels*, the parties entered into a written agreement that described a 27–acre piece of property. *See* 740 P.2d at 1376. The contract was for the sale of one parcel of the described property, and the description of the parcel to be sold was left "to be approved by all the parties in writing." *Id.* at 1377. This court held that the description of the parcel to be sold did not satisfy

the statute of frauds because "[t]he identity and location of the land to be conveyed was subject to ... subsequent agreement." *Id.* In *Davison*, the parties contracted for the sale of approximately 150 acres of land, "less any acreage reserved by seller," with the "[o]fffer contingent upon buyers['] approval of [the] net acreage description." 517 P.2d at 1028 (emphasis omitted). The Utah Supreme Court held this description to be insufficient because "the location and description of the land to be conveyed was subject to the future mutual agreement of the parties" and was thus "contingent on further negotiations." *Id.* at 1028–29.

¶ 14 By contrast, the description of land to be sold in this case rests solely in the control of *one* of the parties, UDOT. In *Calder v. Third Judicial District Court*, 2 Utah 2d 309, 273 P.2d 168 (1954), a case cited but distinguished by the district court, the Utah Supreme Court held that such a description does satisfy the statute of frauds. *Calder* allowed enforcement of a contract under which the buyer was to select a 200–acre parcel to be purchased out of a larger tract, stating that such an arrangement was sufficient because one party "was to select the land within a given time" and "[a]s far as the contract was concerned, nothing more had to be agreed upon between the parties nor was it uncertain in that respect." *Id.* at 170 (internal quotation marks omitted). As explained in *Davison*, *Calder* held that a land sales contract sufficiently identifies the property to be sold if "the contract grants *one party the exclusive right of selection*, and the contract thus provides a *definite means by which the location and description of the land may be definitely determined without any further agreement of the parties.*" *Davison*, 517 P.2d at 1028 (emphasis added).

¶ 15 In the instant case, Plaintiffs' agreement with UDOT was to buy whatever was left of the Property after UDOT completed

---

1. Contracts for the sale of land must be evidenced by a writing signed by the selling party, a requirement generally known as the statute of frauds. *See* Utah Code Ann. § 25–5–3 (2007) ("Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing."); *Williams v. Singleton*, 723 P.2d 421, 423–24 (Utah 1986) (rejecting plaintiff-seller's argument that writing had to be signed by defendant-buyer as "party to be charged").

two land trades with third parties. The identities of the third parties were known, and the reasons for the trades and the criteria by which the trades would be accomplished were clearly stated. Thus, there was nothing left for Plaintiffs and UDOT to agree upon as to the description of the land to be sold. Rather, the amount and description of land to be sold was entirely within UDOT's control, with no further agreement required from Plaintiffs, and would emerge with complete clarity once the intended trades were accomplished. Under *Calder*, this is sufficient to satisfy the statute of frauds, and the district court erred in concluding to the contrary.

¶ 16 We reverse the district court's ruling that the land description in Plaintiffs' alleged contract is insufficient to satisfy the statute of frauds. Because the remainder of the district court's judgment relies, directly or indirectly, on its conclusion about the land description, we reverse the judgment and remand the matter for such further proceedings as may now be appropriate.

### CONCLUSION

¶ 17 We hold that the contract alleged by Plaintiffs sufficiently identifies the portion of the Property to be sold to comply with the statute of frauds. Accordingly, we reverse the judgment of the district court and remand this matter for further consideration of whether Plaintiffs have otherwise established an enforceable contract or any of their other alleged grounds for relief.

WE CONCUR: CAROLYN B. McHUGH and GREGORY K. ORME, Judges.